607 A.2d 105

**Earl Madison TOWERS, Jr.**

v.

**STATE of Maryland.**

No. 1394, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 29, 1992.

Broughton M. Earnest (Piper & Marbury, on the brief) Easton, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Christian J. Jensen, State's Atty., Caroline County, Denton, on the brief), for appellee.

Submitted before WILNER, C.J., and BISHOP and ALPERT, JJ.

WILNER, Chief Judge.

Appellant owned and operated Towers Pharmacy in Denton. Alerted by the Delaware State Police that certain Delaware citizens were purchasing drugs from that pharmacy without a prescription, the Caroline and Queen Anne's County Narcotics Task Force undertook a surveillance of the pharmacy. On two occasions, officers from the Task Force observed appellant give a brown paper bag to an individual known to be a drug dealer from Delaware. On the second occasion, the officers stopped the dealer's vehicle and found in it both syringes and a variety of prescription drugs, including Tylox, Dilaudid, Codeine, Fastin, Percodan, Demerol, and Hycodan. Appellant was then arrested. He admitted to police that he had been selling prescription drugs to drug dealers for approximately five years because he feared that they would harm his family. According to police, however, appellant also admitted that he "got greedy and kept dealing for the money."

Appellant was charged with fifteen counts of possession and distribution of controlled dangerous substances and related offenses. On January 29, 1991, the parties presented to the court a plea agreement they had reached, under which appellant agreed to plead guilty to Count IX, charging him with distribution of Dilaudid, and the State agreed to dismiss the remaining fourteen counts. The plea agree-

ment also provided that appellant would receive no more than the maximum Sentence Guideline of three years incarceration, that the court would determine whether, and to what extent, execution of that sentence would be suspended, that the length of probation and special conditions of probation would be decided by the court, that appellant would pay $20,000 to the Caroline and Queen Anne's County Narcotics Task Force, that appellant would forfeit $840 in cash and a handgun, which were seized during his arrest, and that appellant's pharmacy and car would not be subject to civil forfeiture. The State apparently agreed not to proceed with a forfeiture of the pharmacy so that appellant could sell it and use the proceeds to pay the $20,000 to the Task Force. The Circuit Court for Caroline County "agreed to accept the plea agreement and the sentencing restrictions that go with it." After determining that there was a substantive basis for the plea, the court entered a finding of guilty and ordered a pre-sentence investigation.

When the plea agreement was presented, the court was made aware that the State Board of Pharmacy, which is the agency charged with licensing and regulating pharmacists, had suspended appellant's pharmacy license. The court said, in that regard:

"THE COURT: Yeah. Now let me tell you a couple of things about any probation that might be involved and also because ... of course I know you had a professional license. You understand of course the Court doesn't have anything to do with that license. We didn't issue it to you and we can't take it away. I suppose in some circumstances I might have the right as a condition of probation to prohibit you to operate as a pharmacist but I've got enough to do without having to regulate pharmacists, so in other words.... what is it? Pharmacy Board ... State Board of Pharmacy?

MR. TOWERS: State Board of Pharmacy.

THE COURT: Okay. They're the ones that apparently issued the license. I assume they took it or suspended it or ...

MR. TOWERS: Suspended it ...

THE COURT: ... Yeah well, whether or not you get it back, whether you have hearings is all up to them but under the law we have to report to them this conviction as of the effective date of it, do you understand that?

MR. TOWERS: Yes sir."

(Ellipses in the original.)

Appellant returned for sentencing on April 3, 1991. Although the pre-sentence investigation report turned up nothing more critical of appellant than what had been presented earlier, the court was quite stern in addressing appellant, expressing its deep concern over his conduct and rejecting as an ameliorating factor appellant's claim that he had acted under some duress. Except in two respects, however, the court imposed a sentence consistent with what had been agreed upon when the guilty plea was accepted. Appellant was given 10 years in prison, all but three of which were suspended in favor of five years of supervised probation. The $20,000 payable to the bi-county Narcotics Task Force had already been paid by appellant and that provision was therefore not reflected in the actual judgment announced by the judge and docketed by the clerk.

The two new items added by the court were (1) an additional $15,000 fine payable through the Division of Parole and Probation at the rate of $3,000 a year and, (2) as a condition of probation, that appellant "not work in a pharmacy without [the] Court's permission even if [he regained his pharmacy] license." This appeal concerns only those two items, appellant complaining that both were beyond the authority of the court to impose. His complaints have merit.

### (1) The $15,000 Fine

█ As noted, the plea agreement presented to and accepted by the court called for appellant to pay $20,000 to the Narcotics Task Force. There was no provision for any other fine or monetary exaction. Indeed, in commenting on the $20,000, the court stated at that time:

"[Y]ou would be required at sentencing to make a.... pay a fine or in lieu of a fine, a contribution to the drug task force for Caroline/Queen Anne's County of ($20,000) Twenty Thousand Dollars, and by the way I think in fairness there that there is a fine permitted for this offense. *I'm telling you up front if this is a condition I'm not going to fine you even if I have a right to.* That wasn't stated but we'll just operate on that understanding. So we'll call that in lieu of a fine whether you call it a contribution but you'd have to pay ($20,000) Twenty Thousand Dollars at sentencing for the agreement to be carried out, you understand that?

A Yes sir."

(Emphasis added.)

At sentencing, the court took a very different approach:

"Now this twenty thousand dollars ($20,000) that you paid, I take it, was in return for releasing ... the State's doing certain things ... the State's Attorney releasing forfeiture and dismissing the other cases. And I intend to impose a fine because the fine is different from that and the fine is fifteen thousand dollars ($15,000) which will be payable through Parole and Probation in installments of three thousand ($3,000) dollars each year you are on probation and the reason for that is this, as I figure it from your own statement you averaged sixteen hundred ($1,600) dollars a month for 15 months, that's giving you the benefit of the doubt which comes out to twenty eight thousand eight hundred dollars ($28,800) of money that you made through a State license that you shouldn't have made. You owe society back that."

The State concedes, and we agree, that the court's imposition of the $15,000 fine was improper. Md.Rule 4–243(c)(3) states that "[i]f the plea agreement is approved, the judge shall embody in the judgment the agreed sentence...." In interpreting Md. Rule 4–243, the Court in *Smith v. State*, 80 Md.App. 371, 375, 563 A.2d 1129 (1989), held that:

"[I]f the plea agreement is approved, the judge *shall* embody the agreement into the disposition of the

case.... 'As a general rule, once a judge has accepted a guilty plea and bound the defendant to it, the judge cannot refuse to carry through the bargain that induced the pleas.' "

The court accepted an agreement under which appellant undertook to pay, and in fact did pay, $20,000 to the Caroline and Queen Anne's County Narcotics Task Force in lieu of any fine. An additional fine of $15,000 was not a part of the plea agreement and indeed was expressly excluded by the court. It therefore cannot be imposed.

### (2) Condition of Probation

In the course of the sentencing proceeding, the court was apprised that appellant's pharmacy license had been suspended for only a year—until October 1, 1991. Whether that meant that the license would be automatically reinstated then or that appellant could simply apply for reinstatement at that time is not clear.[1] In either case, that did not sit well with the court, and it remarked:

"I find it appalling that the Pharmacy Board would consider ever giving you back a pharmacy license. That's the[ir] business but I know this much, you should not work in a pharmacy without Court permission even if you have your license and the reason is Mr. Towers, not that I propose to set myself up as a Super Pharmacy Board but you can't be trusted with the license. Obviously you succumbed to temptation once and there's a good chance you'd do it again. You'd be a marked man so you can't expect at least while you're on probation to be working in a pharmacy by yourself again. At least not without the Court's permission."

---

1. The pre-sentence investigation report notes that appellant "advised that his pharmacist license is suspended until 10/1/91 due to the instant offense." In argument, defense counsel observed that the Pharmacy Board "has indicated that they will consider reinstating his license this October." Neither the order of the Board nor any correspondence from the Board is in the record before us.

That sentiment was reflected in the following written statement imposed as a condition of probation: "Do not work in a pharmacy without Court's permission even if you have a license...."

Appellant challenges that condition on two grounds—(1) that it usurps the prerogatives of the Board of Pharmacy, which is the body authorized by the General Assembly to grant, suspend, and reinstate licenses to practice pharmacy, and (2) that it amounts to a violation of due process by interfering with his ability to earn a living, which is a Constitutionally-protected property interest.[2] Although these two complaints enjoy a certain measure of overlap, they are quite different. In this case, we need address only the first.

The issue here is essentially one of separation of powers—whether, in particular, the commitment of a specific area of regulation by the Legislature to an Executive Branch agency serves as an implied, but nonetheless effective, circumscription on an otherwise extensive Judicial power. We are dealing with overlapping circles of authority that are statutorily based, and it is therefore to the respective statutes that we must first turn.

---

**2.** Appellant notes as well, almost in passing and without much discussion, that this condition constitutes a term "less favorable to the defendant than those comprehended by the agreement," and calls for modification on that ground as well. Had this argument been fully developed and not simply thrown in, almost as an afterthought, we may have grounded our decision on it. Normally, an appellate court will decide an issue on the narrowest available ground. That is not an inflexible rule, however (*cf. Sullivan v. Dixon*, 280 Md. 444, 447 and 448, n. 3, 373 A.2d 1245 (1977)), and we choose not to follow it in this case for two reasons. First, the argument on the narrow issue was skimpy, at best, and the court *did* reserve the right to set reasonable conditions of probation. More important, the principal focus of both briefs was on the court's authority to impose this kind of condition. There is a relative dearth of authority on that issue, and this case presents a good opportunity to provide guidance on the matter. The question is not a moot one; it is properly raised and submitted for resolution.

Md.Code art. 27, § 641A(a) provides that, upon entering a judgment of conviction, the court may suspend the imposition or execution of sentence "and place the defendant on probation upon such terms and conditions as the court deems proper." This authority, as so expressed, is obviously very broad, but it is not unlimited. As we indicated in *Watson v. State,* 17 Md.App. 263, 274, 301 A.2d 26 (1973), "[w]hatever latitude the statutes repose in the trial judge, it remains, of course, fundamental that conditions of probation must be reasonable and have a rational basis." *See also Bird v. State,* 231 Md. 432, 190 A.2d 804 (1963); *Haynes v. State,* 26 Md.App. 43, 47, 337 A.2d 130 (1975); *Stone v. State,* 43 Md.App. 329, 405 A.2d 345 (1979); *Ward v. State,* 280 Md. 485, 507 n. 1, 374 A.2d 1118 (1977) (Concurring and Dissenting Opinion by Eldridge, J.).

The licensing and regulation of pharmacists is committed to the State Board of Pharmacy. That Board, a unit within the Department of Health and Mental Hygiene, is charged generally with adopting regulations "necessary to protect the public health, safety, and welfare and that establish standards for practicing pharmacy and operating pharmacies...." Md.Code Health Occ. art., § 12–205(a). More particularly, the Board is empowered to license pharmacists. Section 12–306 directs the Board to issue a license "to any applicant who meets the requirements of this title," and § 12–307 states clearly and without restriction that "[a] license authorizes the licensee to practice pharmacy while the license is effective." Control over that license is also vested in the Board. Section 12–313(b) permits the Board to suspend or revoke a license for certain enumerated conduct, including conviction of a felony, a crime of moral turpitude, or a violation of the statutes included in that title of the Code, or, as occurred here, dispensing without a valid prescription a drug for which a prescription is required. Proceedings before the Board are in accordance with the Administrative Procedure Act (§ 12–315); parties are specifically entitled to notice, a hearing, counsel, and administrative and judicial review (§§ 12–315, 12–316).

The clash here, at this point, is only a potential one. The Board, to our knowledge, has not yet reinstated appellant's pharmacy license, and so the condition complained of does not, at present, contradict or diminish any right that appellant has under the pharmacy laws to own or operate a pharmacy or to work as a pharmacist. That the conflict is a potential, rather than a present or immediate, one does not render the issue moot, however. Courts, including this one, have stepped in before the collision has occurred. *See Smith v. State*, 80 Md.App. 371, 563 A.2d 1129 (1989).

Until recently, appellate courts tended to resolve conflicts such as this in favor of the conditions imposed by the judicial tribunals. Indeed, until recently, appellate courts seemed generally unwilling to review the legality of probation conditions, except in the most extreme cases, either on the theory that the probation itself was an "act of grace" allowing the court the widest latitude in imposing conditions, or on the theory that the probation was a "contract" freely entered into, and that the probationer had no right to complain about conditions to which he had agreed. *See Judicial Review of Probation Conditions*, 67 Colum.L.Rev. 181 (1967). Reflecting that judicial philosophy, the California Court in *People v. Frank*, 94 Cal.App.2d 740, 211 P.2d 350 (1949), affirmed an order requiring a doctor, convicted of sexually abusing a 10–year old patient, to abstain from the practice of medicine. *Cf. Whaley v. United States*, 324 F.2d 356 (9th Cir.1963) and *Stone v. United States*, 153 F.2d 331 (9th Cir.1946). That attitude has shifted, however, and courts now have looked with a more jaundiced eye on a whole range of special conditions, including those placed on the practice of professions and occupations that are regulated by other agencies.

A bellwether case in this regard is *United States v. Pastore*, 537 F.2d 675 (2d Cir.1976). A lawyer, admitted to practice in New York, was convicted of wilfully filing a false income tax return. Part of his prison sentence was suspended in favor of probation, one condition of which was that he resign from the bar. The Second Circuit Court of

Appeals struck that condition and remanded for resentencing. Although it acknowledged the broad authority that courts have in imposing conditions of probation and eschewed the showing of "particular solicitude for lawyers or for others engaged in a profession," *id.* at 683, nonetheless it believed that the District Court had inappropriately usurped the prerogatives of the State disciplinary authority. Under New York law, "disbarment for this offense would not be automatic, and [the defendant] would have an opportunity to demonstrate why he should not be disbarred." *Id.* at 682–83. Thus, said the Court:

> "There is, no doubt, a general public feeling that one who has been convicted of a crime should not practice law, and this proposition is surely true in many cases. But the applicable law cited above recognizes that there are exceptions and that the facts of the individual case should control. *Since expulsion from the state bar is a sanction precisely governed by statute and regulation, it would seem preferable not to impose that sanction except by the procedure and for the reasons there prescribed.* The protection of the public that was the judge's legitimate concern here could have been safeguarded by sending the judgment of conviction to the Appellate Division of the State of New York for appropriate proceedings." [3]

*Id.* at 683 (emphasis added).

We must imagine that the Maryland Court of Appeals would take the same view, at least as to lawyers. The disciplining of lawyers is a judicial function controlled tightly by the Court of Appeals. *See Attorney General v. Waldron*, 289 Md. 683, 426 A.2d 929 (1981). That Court has prescribed not only the ethical standards to which lawyers must conform (Md.Rule 1230, Md.Rules of Professional

---

**3.** That procedure, it appears, was followed in this case. From the judge's comments, it seems that appellant's conviction was reported to the State Board of Pharmacy, which had suspended appellant's license even before the judgment was entered.

Conduct) but also the precise procedure and standards for disciplining lawyers who transgress those standards. Md. Rules BV1–BV18. We cannot conceive that the Court would permit a Circuit or District Court judge, as a condition of probation, to preclude a lawyer admitted by the Court of Appeals from practicing his or her profession or to place conditions on that practice not approved or provided for by the Court of Appeals. Should a different rule apply when the regulatory authority is vested in an Executive Branch agency?

The modern answer seems to be "no." In *U.S. v. Sterber*, 846 F.2d 842 (2d Cir.1988), a case close in point, a pharmacist was convicted of falsely recording that the hospital where he was employed received one bottle of cocaine flakes when in fact it received two bottles. As a special condition of his probation, he was required to surrender his pharmacist's license to State authorities. Relying on *Pastore*, the Second Circuit Court of Appeals struck that condition. At 842–43, it stated that "[b]ecause New York [law] sets forth well-defined procedures to determine whether revocation of Sterber's license is an appropriate sanction and provides Sterber with a meaningful opportunity to contest the imposition of such a sanction, we hold that the special condition of probation was improper...." *See also* discussion at 844.

*McPike v. State*, 473 So.2d 291 (Fla.App.1985), is to the same effect. A doctor was convicted of theft. As a condition of probation, the court prohibited him from writing prescriptions. Citing *Pastore*, the appellate court struck that condition, holding, at 292:

> "If appellant's right to effectively engage in his profession is to be taken away from him while on probation, it should be done by the Board of Medical Examiners pursuant to [the applicable Florida statute]. The statute provides an adequate safeguard for protecting the public through a well-defined procedure for determining whether the appellant should be allowed to prescribe medicine.

There is no reason why that procedure should not be utilized in this case."

In the abstract, we may share the judge's concern over the prospect that a person who has illegally sold prescription drugs to a drug dealer may soon have his pharmacy license restored. But it does not appear that is certain to happen, and, in any event, the Legislature has left that decision to the State Pharmacy Board, not the Circuit Court for Caroline County. For the reasons noted, we shall vacate the challenged condition.

$15,000 FINE AND SPECIAL CONDITION PRECLUDING WORK IN PHARMACY VACATED; JUDGMENT OTHERWISE AFFIRMED. CAROLINE COUNTY TO PAY THE COSTS.