685 A.2d 1176

**Frances Diana SHEPPARD**

v.

**STATE of Maryland.**

**No. 10 Sept. Term, 1996.**

Court of Appeals of Maryland.

Dec. 12, 1996.

Nancy S. Foster, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Kathryn Grill Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ.

CHASANOW, Judge.

The issue in the instant case is whether the trial judge abused his discretion by requiring, as a condition of probation, that a defendant convicted of driving under the influence of alcohol not operate a motor vehicle for the full three-year term of probation, even if the Motor Vehicle Administration (MVA) restores her driver's license.

I.

The facts in the instant case are not in dispute. The appellant, Frances Diana Sheppard, was convicted pursuant to Maryland Code (1977, 1992 Repl.Vol.), Transportation Article, § 21–902(b) [1] of two counts of driving under the influence of alcohol. One offense occurred on August 23, 1994 and the other on March 6, 1995. A sentencing hearing was held, and Sheppard's attorney proffered that Sheppard had recently undergone triple-bypass, open-heart surgery, that she was suffering from anxiety and stress as the result of the recent murder of her son by an unidentified drug dealer, and that she was now in a counseling and alcohol treatment program. In allocution Sheppard stated:

"I'm not working now. I have no driver's license. And I live in Ocean Pines. I just don't have access to public transportation. And I've been under so much stress that I've tried to get my life together. I want to go back to work [as a registered nurse] more than anything."

The trial judge was also informed that Sheppard had two prior offenses, each of which occurred over ten years before the two instant offenses. Those prior offenses resulted in a probation before judgment for driving under the influence in 1982 and a conviction for driving under the influence in 1983.

---

**1.** All sections *infra,* unless otherwise indicated, refer to Maryland Code (1977, 1992 Repl.Vol., 1996 Supp.), Transportation Article.

For each of her new driving under the influence convictions, the court imposed a one-year-concurrent sentence, with all but 60 days suspended and a five-hundred-dollar fine. The court also placed Sheppard on supervised probation for three years. In addition, the court imposed several conditions including "alcohol counselling as may be directed by her probation officer, ... mandatory attendance at AA at least four times weekly," random urinalysis, and the requirement that she "not ... possess or consume any alcoholic beverages." As an additional condition of probation, the court stated: "I'm going to order her to not operate a motor vehicle while on probation. * * * Even if the [M]otor [V]ehicle [A]dministration gives you back your license, you cannot drive, because my order says you can't."

Sheppard appealed her sentence to the Court of Special Appeals raising the single issue: "May a trial judge lawfully order a defendant, in a driving under the influence case, as a condition of probation, to abstain from driving a motor vehicle for the three year term of probation?" This Court, on its own motion, issued a writ of certiorari to review the case prior to decision by the Court of Special Appeals. We hold that, under the circumstances of the instant case, the trial judge abused his discretion in ordering, as a condition of probation, that Sheppard not operate a motor vehicle even if the MVA returns her driver's license.

## II.

A judge has very broad discretion when imposing conditions of probation "and may make such orders and impose such terms as to ... conduct ... as may be deemed proper...." Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 639(a). A judge, however, does not have unlimited discretion in fashioning conditions of probation. A condition of probation may be found to be unduly restrictive and unreasonable. For example, the suspension of a sentence on the condition that the defendant, who had been found guilty of assault with intent to murder, return to Puerto Rico and remain there for at least a

ten-year period has been held to be an abuse of discretion and void. *Bird v. State,* 231 Md. 432, 190 A.2d 804 (1963).

Courts are divided on whether a judge may, as a condition of probation, prohibit a licensed driver from operating a motor vehicle during the period of probation. Some states have upheld such conditions of probation. For example, in *City of Detroit v. Del Rio,* 10 Mich.App. 617, 157 N.W.2d 324 (1968), the Court of Appeals of Michigan upheld a no-driving condition of probation and rejected the argument that the Michigan vehicle code provides the exclusive procedure for revocation and suspension of licenses. The court noted that the vehicle code did not specifically state that it would be the exclusive procedure for revocation and suspension of drivers' licenses and that, in any event, the purposes of the vehicle code were not intended to be identical to those of the criminal code. *Del Rio,* 157 N.W.2d at 326. The court explained that the purpose of suspension or revocation of licenses under the vehicle code is traffic safety. *Id.* The purposes of the criminal law, by contrast, "may coincide with the public aim of traffic safety," but there are other purposes as well. *Id.* Thus, the court rejected the argument that the vehicle code preempts a court's power to prohibit the operation of a motor vehicle as a condition of probation. *Id.; accord Brock v. State,* 165 Ga. App. 150, 299 S.E.2d 71, 72 (1983)(finding that statute giving Department of Public Safety authority to revoke or suspend drivers' licenses did "not purport to deprive a court . . . of the authority to suspend a driver's license as a condition of probation"); *see also Fearn v. Zolin,* 9 Cal.App.4th 1756, 12 Cal.Rptr.2d 314, 316 (1992)(adopting view that administrative suspension of licenses, civil in nature, and licensure restriction pursuant to probation, criminal in nature, operate independently of each other).

The issue before this Court implicates both preemption and separation of powers. Did the legislature, although establishing detailed MVA administrative hearing procedures, detailed administrative license suspension and revocation penalties, and detailed procedures for restoration of driving privileges, intend that the courts also have virtually unrestricted authori-

ty over the driving privileges of those people on probation? Some states have upheld a condition of probation that a defendant not drive a motor vehicle by finding express legislative delegation of authority to a sentencing judge to restrict driving privileges. Clearly, if the legislature believed it was warranted, it could have empowered the trial courts to impose, as a condition of probation, suspension of driving privileges in cases involving motor vehicle violations. *Cf. State v. Seaman,* 237 Neb. 916, 468 N.W.2d 121, 122 (1991)(statute requires, as a condition of probation for third offense of driving while intoxicated, that the court order a defendant not to drive for at least a period of one year); *Blair v. State,* 554 So.2d 1226 (Fla.Dist.Ct.App.1990)(Florida statute authorizes the sentencing court to direct the Department of Highway Safety and Motor Vehicles to revoke for a period of up to two years a driver's license of an individual convicted of possession of cocaine); *but see People v. Goldberg,* 45 Cal.App.3d 601, 119 Cal.Rptr. 616, 617 (1975)(Under the Vehicle Code, "a court cannot, even as a condition of probation, restrict a defendant's right to drive a motor vehicle for more than the period prescribed by the applicable sections of the ... Code.").

In *Towers v. State,* 92 Md.App. 183, 607 A.2d 105 (1992), a pharmacist who pled guilty to distributing Dilaudid was placed on probation with the special condition that the defendant not work in a pharmacy without the court's permission, even if the defendant's suspended pharmacy license was reinstated by the State Board of Pharmacy. The issue before the Court of Special Appeals was the validity of that condition of probation. Judge Wilner, writing for the court, identified the issue as follows:

"The issue here is essentially one of separation of powers—whether, in particular, the commitment of a specific area of regulation by the [l]egislature to an Executive Branch agency serves as an implied, but nonetheless effective, circumscription on an otherwise extensive Judicial power. We are dealing with overlapping circles of authority that are statutorily based, and it is therefore to the respective statutes that we must first turn.

> Md.Code [A]rt. 27, § 641A(a) provides that, upon entering a judgment of conviction, the court may suspend the imposition or execution of sentence 'and place the defendant on probation upon such terms and conditions as the court deems proper.' This authority, as so expressed, is obviously very broad, but it is not unlimited. As we indicated in *Watson v. State*, 17 Md.App. 263, 274, 301 A.2d 26[, 31–32] (1973), '[w]hatever latitude the statutes repose in the trial judge, it remains, of course, fundamental that conditions of probation must be reasonable and have a rational basis.' *See also Bird v. State*, 231 Md. 432, 190 A.2d 804 (1963) . . . ."

*Towers*, 92 Md.App. at 189–90, 607 A.2d at 108. In finding that the condition of probation violated the separation of powers, the Court of Special Appeals quoted from *U.S. v. Sterber*, 846 F.2d 842 (2d Cir.1988):

> " '[B]ecause New York [law] sets forth well-defined procedures to determine whether revocation of Sterber's [ ] license is an appropriate sanction and provides Sterber with a meaningful opportunity to contest the imposition of such a sanction, we hold that the special condition of probation was improper . . . .' "

*Towers*, 92 Md.App. at 193, 607 A.2d at 110 (quoting *Sterber*, 846 F.2d at 842–43). Because the licensing and regulation of pharmacists is committed to the State Board of Pharmacy, *see* Md.Code (1981, 1994 Repl.Vol.), Health Occupations Art., §§ 12–205, 12–301(a), the Court of Special Appeals held in *Towers* that "the [l]egislature has left [the decision to restore Towers' pharmacy license] to the State Pharmacy Board, not [to] the Circuit Court for Caroline County." *Towers*, 92 Md.App. at 194, 607 A.2d at 110. By analogy, in the instant case, the legislature has left the decision to suspend one's driving privileges to the MVA and not to the Circuit Court for Worcester County.

The Transportation Article provides a comprehensive set of statutes regulating motor vehicles and persons who drive motor vehicles in the state of Maryland. Section 12–104(b)(1)

of that Article authorizes the MVA to "adopt rules and regulations to carry out ... [t]hose provisions of the Maryland Vehicle Law that relate to or are administered and enforced by the [MVA]. . . ." The Transportation Article includes statutes delineating when a person can receive a license, *see* §§ 16–102 through 16–114.1, and when that license can be suspended, cancelled, or revoked, *see* §§ 16–201 through 16–208.1. The Article also sets forth the various penalties for certain driving offenses as well as time limitations on the suspension of a license. §§ 27–101 through 27–109; 16–205, 16–205.1, 16–206, 16–208. Under the specific terms of the Transportation Article, "[w]hen issued and signed, a driver's license authorizes the licensee to drive any vehicle of the type or class specified on it, subject to any restrictions endorsed on the license." § 16–111(d)(2).

The legislature has also established a very detailed statutory scheme governing driver's license suspension, revocation and reinstatement. In addition to conferring upon the MVA the power to impose such sanctions, the legislature has limited the duration of license suspensions, as well as established detailed procedures for the reinstatement of revoked licenses.

§ 16–404(c)(2). Section 16–208(a) provides that "the Administration may not suspend a license or privilege to drive for a period of more than 1 year." The exceptions to this one-year limitation are set forth with particularity in such provisions as §§ 16–208(a)(2), which permits the MVA to "suspend for an indefinite period the license or privilege of any individual who cannot drive safely because of his physical or mental condition;" and 16–404(c)(2), which authorizes various periods of suspension for the accumulation of points based on repeated convictions for violations of drinking and driving laws. Section 16–404(c)(2) is particularly significant in that it authorizes the MVA to suspend the license of a driver against whom a designated number of points has been assessed for violations of §§ 21–902(b) or (c) (driving under the influence of alcohol or drugs). The legislature has restricted the duration of such suspensions as follows:

"(i) For a first conviction, not more than 6 months;

(ii) For a second conviction at least 5 years after the date of the first conviction, not more than 9 months;

(iii) For a second conviction less than 5 years after the date of the first conviction or for a third conviction, not more than 12 months; and

(iv) For a fourth or subsequent conviction, not more than 24 months."

Section 16–205(c) further provides that the MVA may:

"suspend for not more than 120 days the license of any person who, within a 3–year period, is convicted under § 21–902(b) or (c) of this article of driving or attempting to drive a motor vehicle while under the influence of alcohol or while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person cannot drive a motor vehicle safely and who was previously convicted of a violation under [§ 21–902(a), § 21–902(b), § 21–902(c), or § 21–902(d) ]."

The Transportation Article thus sets forth in detail the circumstances under which license suspensions are warranted, as well as the permissible duration of such suspensions. Significantly, the suspension periods prescribed by the legislature under this detailed statutory scheme are substantially shorter than the suspension imposed by the judge in this case.

Additionally, the legislature has established procedures for reinstating the license of a person whose driving privileges have been revoked, including those licenses revoked for alcohol-related driving incidents. § 16–208(b). Upon revocation, the driver's license must be surrendered to the MVA. § 16–210(a). An individual whose license has been revoked for the first time may apply for reinstatement at any time after the MVA receives the revoked license. § 16–208(b)(2)(i). The MVA may not grant reinstatement, however, until six months after it has received the revoked license. § 16–208(b)(2)(ii). For a second revocation, the individual may apply for reinstatement at any time after one year from the date of surrender and receipt of the license, and in the case of a third revocation, application for reinstatement may be filed at any

time after eighteen months from the date of surrender and receipt of the license. § 16–208(b)(3)(i),(4)(i). For revocations resulting from certain serious violations, including "three or more ... alcohol-related or drug-related driving incidents," the MVA may grant an application for reinstatement "only if, after an investigation of an individual's habits and driving ability, the [MVA] is satisfied it will be safe to reinstate the license or privilege...." § 16–208(b)(6)(ii)(3). The Transportation Article thus establishes specific procedural safeguards in an administrative license revocation that are denied the individual whose license is revoked through a probation order. Furthermore, if Ms. Sheppard had her license revoked by the MVA for three or more alcohol-related incidents, she would be subject to periods of suspension and revocation substantially shorter than that imposed by the judge, but she would only be eligible for reinstatement if there was an investigation and the MVA determined that it was safe to reinstate her license.

The legislature expressly has given courts limited authority to order the MVA to initiate a period of suspension in connection with the disposition of specified juvenile cases. Maryland Code (1974, 1995 Repl.Vol., 1996 Supp.), Courts and Judicial Proceedings Art., § 3–820(d)(1)(i) provides that a juvenile court may order the MVA to suspend a child's driving privileges "for a specified period of not less than 30 days nor more than 90 days." Section 16–206(b) of the Transportation Article in turn authorizes the MVA "to suspend the driving privileges of a child for the [amount of] time specified by [a] court" in a juvenile court order issued pursuant to Md.Code (1974, 1995 Repl.Vol., 1996 Supp.), Courts and Judicial Proceedings Art., § 3–820(d). Similar authority is not vested in the courts in other contexts, such as where the court is fashioning conditions of probation.

There is not a great deal of difference between the violation of the separation of powers doctrine that occurred in the instant case and that which took place in *Smith v. State*, 80 Md.App. 371, 563 A.2d 1129 (1989). In *Smith*, after the defendant had entered a guilty plea to the charge of child abuse, the court sentenced Smith and imposed as a condition

of probation "that Smith not seek custody of her children unless she first obtained permission from the judge." *Smith*, 80 Md.App. at 373, 563 A.2d at 1130. In vacating this condition of Smith's probation, the Court of Special Appeals held:

> "Jurisdiction over the children rests with the Juvenile Court of Baltimore City. In accordance with the statutory procedures, the children were placed under the care of DSS, who then placed the children with relatives. The authority to determine whether and under what circumstances Smith's child or children will be returned to her rests in the Juvenile Court. Since the trial judge was without jurisdiction to decide custody directly, he is seeking to do indirectly that which he cannot do directly, *i.e.*, nevertheless control custody of the children insofar as their mother, Kim Smith, is concerned." (Footnote omitted).

*Smith*, 80 Md.App. at 374, 563 A.2d at 1130. The Court of Special Appeals concluded that the judge had "inject[ed] himself into a matter that the [l]egislature has decided best rests in the jurisdiction of the juvenile court." *Smith*, 80 Md.App. at 376, 563 A.2d at 1131.

In *In Re David K.*, 48 Md.App. 714, 429 A.2d 313 (1981), the defendant, a juvenile, was found delinquent for driving while intoxicated. As a part of its disposition, the juvenile court suspended David's privilege to operate a motor vehicle. Addressing the defendant's challenge to the juvenile court's authority to suspend David's driving privileges, Judge Wilner, writing for the court, stated:

> "In accordance with statutory criteria (§§ 16–103, 16–103.1), MVA is empowered to issue learners' permits (§ 16–105), accept applications for licenses (§§ 16–106, 16–107), examine applicants (§§ 16–110, 16–111), and issue the appropriate licenses (§§ 16–111, 16–113, 16–114). Section 16–111(d)[2] expressly provides that '[w]hen issued and signed, *a driver's license authorizes the licensee to drive any vehicle of the type or class specified on it*, subject to any restrictions endorsed on the license.' (Emphasis supplied).

What MVA giveth, MVA may taketh away; but only for specific statutorily prescribed reasons and only in accordance with statutorily prescribed procedures and limitations.

\* \* \*

The action of the juvenile court in this case was quite obviously not in harmony with the statutory scheme. It suspended appellant's driving privileges without purporting to suspend his license, which is inconsistent with § 16–111(d), *supra.* It ordered an indefinite suspension, which is inconsistent with the specific time limits on suspensions set by § 16–208(a) of Transportation Article. And, equally important, it has placed appellant in a status of which MVA is completely unaware. If a juvenile court had that authority (and exercised it in the manner done here), the integrity of MVA's records would soon be placed in serious jeopardy. It could never be entirely certain of the actual driving status of its licensees under twenty-one years of age.

Given the clear thrust of the overall statutory scheme of regulation, we conclude that a juvenile court has no present authority directly to suspend a child's driving privileges upon a finding of delinquency. That is a power committed by statute exclusively to MVA." (Footnote omitted).

*In Re David K.,* 48 Md.App. at 723–25, 429 A.2d at 318–19. The Court of Special Appeals did, however, note in dicta that "[w]e have no doubt that such restraint could have been directly effected as part of a probation order—a *voluntary agreement* by appellant to surrender for a time his privilege to drive as a condition of probation." *In Re David K.,* 48 Md.App. at 721–22, 429 A.2d at 317 (emphasis in original). We need not decide if the condition imposed in the instant case could be valid if freely and voluntarily consented to by Sheppard because there was no consent, and a timely appeal

of the condition of probation was noted.[2]

The Transportation Article clearly and specifically sets the MVA administrative hearing procedures, suspension and revocation penalties, as well as manner of restoration of driving privileges for those convicted of driving under the influence. This specific statutory scheme of regulation delegated to the executive branch controls over the general statute authorizing a court to impose conditions of probation.

*JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY WITH DIRECTIONS TO VACATE THE CONDITION OF PROBATION WHICH PROHIBITS THE PETITIONER FROM DRIVING FOR A PERIOD OF THREE YEARS. COSTS TO BE PAID BY WORCESTER COUNTY.*

---

**2.** To the extent that language in *Kursch v. State*, 55 Md.App. 103, 460 A.2d 639 (1983) is inconsistent with our holding today, that language is expressly disapproved.