## State of Vermont v. Joshua E. Nelson

[742 A.2d 1248]

Nos. 97-385 & 97-486

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed November 12, 1999

*Paul Finnerty*, Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *William A. Nelson*, Appellate Attorney, and *Alexa Cole*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** In these consolidated appeals from convictions for driving while intoxicated and negligent operation of a motor vehicle, with fatality resulting, defendant challenges the imposition of a condition of probation that prohibits him from operating a motor vehicle during the probationary period. Specifically, defendant contends the court was without authority to restrict his operating privileges for a period in excess of the mandatory one-year license suspension imposed by statute. We disagree and, accordingly, affirm.

The material facts are not in dispute. The case arose when the motor vehicle which defendant was driving collided head-on with another vehicle, killing the driver and two passengers in the other car, and injuring a third passenger. Defendant and his passenger were also seriously injured. Defendant was nineteen years old, and his blood alcohol concentration at the time of the accident was later determined to be .236%, nearly three times the legal limit.

Defendant entered guilty pleas to one count of driving while intoxicated with fatality resulting, and one count of careless and negligent operation of a motor vehicle with fatality resulting. The trial court imposed a sentence of three-to-thirty years, all but three suspended, and imposed multiple conditions of probation, including that defendant seek and obtain employment or participate in vocational training, submit to alcohol testing and attend alcohol counseling, refrain from purchasing or possessing alcoholic beverages, limit his associates and observe a curfew if ordered by his probation officer, make at least nine presentations per year to local high schools and middle schools, and refrain from operating a motor vehicle.

Defendant subsequently moved for reconsideration of sentence on the ground, among others, that the court lacked authority to restrict defendant's driving for longer than the mandatory one-year suspension period under 23 V.S.A. § 1206(b). The court denied the motion. Defendant filed notices of appeal from the original sentencing order and from the denial of his motion for reconsideration, which we consolidated for purposes of review.

The record reveals that the restriction on defendant's operating privileges was an important component in the overall matrix of probation conditions imposed by the court; it would sharply limit defendant's ability to obtain alcohol for himself or others, impede his opportunities to leave the jurisdiction and thereby avoid compliance with his other conditions of probation, and provide a vivid and ongoing testimonial to the high school students whom he was required to address on the consequences of drunk driving.

Defendant nevertheless contends that the condition contravened the statutory DUI scheme and violated the constitutional separation of powers doctrine. See Vt. Const. ch. II, § 5. It is argued that by providing for a mandatory one-year suspension of a driver's license for DUI with a fatality resulting, and vesting the Commissioner of Motor Vehicles with the exclusisve authority to calculate suspensions and revocations in accordance with applicable law, see 23 V.S.A. § 1201c, the Legislature impliedly preempted the court's probationary power to limit defendant's operating privileges for longer periods. On the contrary, virtually nothing in the statutory scheme, the language, or the legislative history of 23 V.S.A. § 1201c demonstrates a legislative intent to constrain the court's traditional authority to impose reasonable probationary conditions in this area. Indeed, as explained more fully below, the probation condition in this case was entirely consistent with the legislative scheme, the Vermont Constitution, prior case law, and the court's traditional sentencing discretion.

█ This and other courts have long held that the "separation of powers doctrine does not contemplate an absolute division of authority among the three branches such that each branch is hermetically sealed from the others." *In re D.L.*, 164 Vt. 223, 228, 669 A.2d 1172, 1176 (1995); see also *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (Constitution "enjoins upon its branches separateness but interdependence, autonomy but reciprocity"). The practical demands of governance necessarily require "a certain amount of overlapping or blending of the powers."

*D.L.*, 164 Vt. at 229, 669 A.2d at 1176. Accordingly, we apply a relatively forgiving standard to separation-of-power claims, tolerant of such overlapping institutional arrangements short of one branch virtually "usurp[ing]" from another its constitutionally defined function. *Id.*; see also *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977) (proper inquiry focuses on extent to which challenged action prevents coordinate branch from accomplishing its constitutionally assigned functions).

■ Criminal sentencing is a quintessential example of shared responsibility among the separate branches of government. The legislature prescribes the penalty and the manner of its enforcement; the courts impose sentence within the limits prescribed by the legislature; and the executive grants paroles and pardons. See *State v. Borrell*, 482 N.W.2d 883, 889 (Wis. 1992) (discussing shared governmental responsibility in sentencing). Within this tripartite system, however, the imposition of sentence and the exercise of sentencing discretion have long been recognized as "fundamentally and inherently judicial functions." *People v. Navarro*, 497 P.2d 481, 487 (Cal. 1972). A trial court's decision, in particular, to suspend a criminal sentence and impose conditions of probation under 28 V.S.A. § 252 represents an essential tool in the court's ability to shape a criminal sentence to the rehabilitative needs of the individual defendant. See *State v. Hale*, 137 Vt. 162, 164, 400 A.2d 996, 998 (1979) (purpose of probation is rehabilitative, to provide opportunity for defendant to voluntarily condition his or her behavior to requirements of law).

■ Indeed, from as early as 1898, trial courts in Vermont have enjoyed broad statutory authority to suspend all or part of a criminal sentence and place the defendant on probation with such terms and conditions "as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist him to do so." 28 V.S.A. § 252(a); see also 1898, No. 128, § 2 (trial court may impose probation "for such time and upon such conditions as it may prescribe"); *State v. Barnett*, 110 Vt. 221, 231, 3 A.2d 521, 525 (1939) (courts traditionally "allowed wide discretion" in imposing conditions of probation). While not without limitation, a trial court's discretion in this context is expansive, and will generally be upheld if the probation condition is reasonably related to the crime for which the defendant was convicted. See *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 691-92 (1990); see also *State v. Emery*, 156 Vt. 364,

369, 593 A.2d 77, 79-80 (1991) (probation condition valid so long as it has reasonable nexus with rehabilitation of defendant and protection of public).

Recognizing the importance of probation to a trial court's performance of its traditional judicial responsibility in sentencing, and the tolerance with which courts have traditionally viewed overlapping spheres of authority, this Court should not lightly infer a legislative intent to strip the trial courts of such power. When it has chosen to do so, the Legislature has made clear its intent to limit a court's probationary authority. It has, for example, expressly required the imposition of specific probation conditions in certain circumstances, see, e.g., 13 V.S.A. § 7043 (restitution to crime victims who have suffered material loss or incurred medical expenses), and has explicitly prohibited the imposition of probation in others. See *id.* § 11a (court may not place on probation or suspend sentence of any person sentenced as violent career criminal). It is reasonable to assume, therefore, that if the Legislature had actually intended to eliminate a trial court's discretion to prohibit a defendant from driving as a condition of probation for grave vehicular offenses, it would have plainly said so.

Indeed, other courts have recognized that the judicial authority to establish a probationary condition restricting a defendant's operation of a motor vehicle should not be usurped by mere implication. See *City of Detroit v. Del Rio*, 157 N.W.2d 324, 326 (Mich. Ct. App. 1968) (rejecting contention that revocation and suspension statutes impliedly "preempted" court's power to restrict operation of motor vehicle as condition of probation); *People v. Dickens*, 373 N.W.2d 241, 245 (Mich. Ct. App. 1985) (relying on *City of Detroit* to uphold condition of probation preventing defendant from driving for five years notwithstanding two-year statutory maximum for license revocation or suspension); *Brock v. State*, 299 S.E.2d 71, 72 (Ga. Ct. App. 1983) (holding that Department of Public Safety's authority to suspend or revoke driving licenses did not "purport to deprive a court . . . of the authority to suspend a driver's license as a condition of probation"); *In re A.H.S.*, 479 S.E.2d 157, 158-59 (Ga. Ct. App. 1996) (relying on *Brock* to uphold trial court's probation condition limiting right to operate motor vehicle beyond statutory suspension period). But cf. *Sheppard v. State*, 685 A.2d 1176, 1177 (Md. 1996); *City of Independence v. Tector*, 688 N.E.2d 276, 278 (Ohio Ct. App. 1996).

Nevertheless, defendant argues — and the dissent asserts — that the Legislature has impliedly preempted the court's authority to

impose reasonable restrictions upon his operation of a motor vehicle. The argument relies principally on 23 V.S.A. § 1201c, which provides that the Commissioner of Motor Vehicles has exclusive authority to calculate, "in accordance with applicable statutes and rules, the duration of suspensions, [and] whether and when revocations, suspensions and reinstatements shall occur." Nothing in the statute, however, expressly or impliedly limits a court's authority to restrict a defendant's operation of a motor vehicle as a condition of probation. The commissioner's stated responsibilities are largely administrative; the statutes prescribe the length of suspensions and the conditions of reinstatement, and charge the commissioner with implementing the statutory terms. See 23 V.S.A. § 1 (commissioner shall carry out statutes of motor vehicle title); *id.* § 1206 (upon conviction of person for driving under the influence, court shall forward conviction report to commissioner, who shall suspend license for 90 days); *id.* § 2506 (suspension for negligent operation with fatality occurring shall be for period of one year).

Section 1201c merely vests the commissioner with exclusive authority to suspend and revoke licenses pursuant to the legislative mandate. It does not implicate a trial court's broad and independent power under 28 V.S.A. § 252 to prohibit a defendant from driving as a condition of probation. The critical distinction between a commissioner's administrative authority to suspend or revoke a license, and a trial court's probationary power to prohibit a defendant from operating a motor vehicle, is not a new one. See *Commonwealth v. Kline*, 340 A.2d 562, 563 (Pa. Super. Ct. 1975) (distinguishing trial court's invalid order that defendant surrender his license, from court's inherent authority "to proscribe the operation of a motor vehicle . . . as a condition of probation for a length of time not exceeding the period of probation") (Van der Voort, J., concurring). The probation condition imposed by the trial court here did not require defendant to surrender his driver's license. Nor did it prohibit defendant from obtaining a driver's license once the mandatory one-year license suspension required by statute expired. Moreover, nothing in the court's probationary order precludes defendant from petitioning the court to modify the conditions of probation to allow restricted operation of a motor vehicle (e.g., to travel to and from employment), or to strike the condition in its entirety. See 28 V.S.A. § 253(a).

Finally, nothing in the underlying purposes of the suspension and revocation statutes necessarily conflict with the probation condition in

this case. Indeed, as this case clearly demonstrates, a condition of probation that limits a defendant's opportunity to operate a motor vehicle may serve entirely different functions from the statutes that provide for the suspension or revocation of an operating license. The latter serve to punish the defendant, deter others, and protect the public safety. Probation, as noted, is designed primarily for individual rehabilitation. Thus, a lengthy period of probation during which a youthful DUI defendant's operation of a motor vehicle is prohibited or restricted can serve to assist the defendant in adjusting from a period when recidicism is likely, to a time when the defendant more fully understands and recognizes the gravity of driving a vehicle while intoxicated. See *City of Detroit*, 157 N.W.2d at 326 (probation condition prohibiting or limiting operation of motor vehicle "may . . . be a useful device in imposing controls upon a particular offender"). The conditions of probation fashioned by the court here were designed to assist defendant in avoiding further DUI-related problems, complying with his other probation conditions, and ultimately "lead[ing] a law-abiding life." 28 V.S.A. § 252(a). These are hardly, as the dissent would have it, "artificial" distinctions.

The dissent argues that the legislative history of 23 V.S.A. § 1201c reveals that it was prompted in part by a judicial reluctance to administer the full range of available penalties, and that allowing judges to impose conditions of probation affecting driving privileges would defeat the legislative purpose of enforcing consistency and uniformity in DUI license suspensions. As noted, however, nothing that occurred in this case undermines the legislatively mandated one-year suspension of defendant's license, or the commissioner's authority to suspend defendant's license in accordance with the legislative directive. Moreover, nothing in the legislative history reveals any intent to curtail a trial court's probationary authority. Had the Legislature actually been concerned about confusion or inconsistency caused by judicial "interference" with the DMV through the imposition of probation conditions, presumably the Legislature would have altered or limited the courts' broad statutory authority to impose reasonable conditions of probation. We decline to read such an intent into a statute which is otherwise silent on the subject.

As for the dissent's expressed concern with administrative efficiency, we perceive no reason why courts which routinely inform the commissioner of civil suspensions and criminal convictions for purposes of license suspension and revocation may not similarly inform

the commissioner of driving restrictions resulting from probation. Nor do we perceive the relevance of the dissent's concern that defendant will find little "solace" in purchasing a worthless driver's license at the expiration of the one-year license suspension period. Perhaps, as the trial court here intended, it will serve as a sober reminder of defendant's ongoing probationary conditions.

■ We are not persuaded, in sum, that the Legislature's statutory authorization to the Commissioner of Motor Vehicles to suspend or revoke a defendant's driver's license was intended to prevent a court from imposing a probationary condition proscribing the operation of a motor vehicle when the condition is, in the court's considered judgment, reasonably necessary to assist an offender in leading a law-abiding life. Accordingly, the judgment must be affirmed.

*Affirmed.*

**Johnson, J.,** dissenting. In the face of a statutory provision explicitly granting the Commissioner of Motor Vehicles exclusive authority to administer and implement Vermont's statutory scheme governing the suspension and reinstatement of driver's licenses, the majority holds today that trial judges may withhold driving privileges beyond the statutorily designated time periods on an ad hoc basis as a condition of probation in criminal cases. Because this holding allows trial judges to contradict or ignore altogether the Commissioner's authority in this area, and to disregard the numerous and detailed statutory procedures that have been established to provide consistent and effective enforcement of sanctions for driving under the influence (DUI), I dissent.

In 1998, the Legislature passed Senate Bill 185 (Act 117), which contained numerous provisions intended to render Vermont's DUI laws more consistent and effective, and especially to address the problem of recidivism. Among these new provisions was 23 V.S.A. § 1201c:

> Notwithstanding any direction or order from any person or entity to the contrary, the commissioner of motor vehicles shall calculate, in accordance with applicable statutes and rules, the duration of suspensions, whether and when revocations, suspensions and reinstatements shall occur, and all other required actions and calculations.

In language that could not be more plain, § 1201c gives the Commissioner of Motor Vehicles exclusive authority to decide, in

accordance with applicable statutes, whether, when and for how long to suspend, revoke or reinstate driver's licenses. The Commissioner retains authority over the duration of suspension and the timing of reinstatement "[n]otwithstanding any direction or order from any person or entity to the contrary." This latter phrase can only be referring to a contrary "direction or order" from a judge or court, which is precisely what happened here.

When defendant was convicted of DUI, the court was free to fine him and impose a jail sentence within the range provided in the penalty statutes. The court was also free to impose reasonable probation conditions. The court was not free, however, to usurp the Commissioner's exclusive authority to determine whether, when, and for how long to suspend defendant's driving privileges.

Under Vermont law, when a person is convicted of DUI, the district court "shall forward the conviction report forthwith to the commissioner of motor vehicles. The commissioner shall immediately suspend the person's operating license . . . for a period of 90 days and until the defendant complies with" the conditions of reinstatement contained in 23 V.S.A. § 1209a. 23 V.S.A. § 1206(a).* "In cases resulting in a fatality, the period of suspension *shall* be one year and until the defendant complies with section 1209a." 23 V.S.A. § 1206(b) (emphasis added). Similarly, if a fatality occurs as the result of careless and negligent operation of a motor vehicle, "the suspension *shall* be for a period of one year." 23 V.S.A. § 2506 (emphasis added). The Commissioner may not reinstate the license of a person convicted of DUI until that person has satisfied the detailed and specific criteria for reinstatement, including education and therapy, contained in § 1209a. In short, a DUI conviction triggers the duty of the court to make a report to the Commissioner, who is then charged with the task of suspending and eventually reinstating the defendant's license, if and when the offender complies with the treatment program, for the statutorily mandated periods and in accordance with statutory procedures.

Apart from the plain meaning of § 1201c and the other statutes cited above, the Legislature's intent to grant the Commissioner exclusive authority over the suspension and restoration of driver's licenses is reinforced by the legislative history of Senate Bill 185,

---

*A second DUI conviction compels the Commissioner to impose an 18-month suspension, and a third or subsequent conviction results in revocation for life. See 23 V.S.A. § 1208.

134

which reveals extreme frustration with the ineffectiveness of prior DUI legislation in reducing the occurrence of DUI and the rate of DUI recidivism. Of primary concern was the disjuncture between the courts' treatment of DUI offenses and the Department of Motor Vehicle's treatment of license suspension issues. As Senator Sears explained, everyone in the system was receiving mixed messages, creating "a complicated [situation in which] citizens are told one thing by the court and a different thing by the DMV. That's not healthy in terms of treatment as well as instruction of the law." Senate Judiciary Committee, January 29, 1997.

The measures enacted in Senate Bill 185 were aimed at (1) reducing inconsistencies in judicial sanctions; (2) allaying public confusion and resentment concerning the length of license suspensions and the requirements for reinstatement; and (3) creating and enforcing consistent procedures for suspending, revoking, and reinstating licenses and for treating offenders so that reliable data on the effectiveness of these measures could be obtained. Section 1209a was amended to establish detailed requirements for reinstatement based on screening for therapy, participation in education and counseling programs, abstinence from drug and alcohol consumption under certain circumstances, and judicial review of decisions by designated counselors. Thus, under the current statutory scheme, license suspension, revocation and reinstatement are intimately intertwined with procedures for mandating treatment and counseling to prevent DUI recidivism.

A key component to achieving the Legislature's stated goals was vesting the Commissioner with exclusive jurisdiction over the regulation of operating privileges. Accordingly, § 1201c stands as a central part of the Legislature's efforts to improve the consistency and efficacy of Vermont's DUI laws.

Faced with the plain language of § 1201c and the overwhelming evidence of the Legislature's intent to give the Commissioner exclusive authority over suspending and reinstating licenses, the majority can point only to the claimed "critical distinction" between prohibiting one from driving and taking away one's driver's license. With all due respect, I believe that invoking this empty distinction exalts form over substance. The primary entitlement bestowed by a driver's license is the right to lawfully operate a motor vehicle. In effect, there is no difference between revoking one's license and preventing one from driving.

Nor am I convinced that the purpose behind suspending operating privileges as a condition of probation is significantly different from

the purpose behind license suspension under Vermont law. Both serve to protect public safety. The majority emphasizes the rehabilitative purpose of probation conditions, but that purpose is also manifest in the detailed criteria contained in § 1209, which conditions reinstatement on DUI offenders participating in education and therapy programs. See 1997, No. 117, Finding 7 (DUI offenders often have been charged with other offenses, meaning that correctional and treatment services must be geared toward antisocial behavior dynamics).

In order to distinguish between the power of the Commissioner and that of the court, the majority states that the court's order does not prevent defendant from obtaining an operator's license. I doubt that defendant will find solace in learning that the challenged probation condition merely prevents him from driving and does not either require him to surrender his driver's license or prevent him from paying his fee and obtaining a new license — albeit one that will not allow him to drive — once the statutory suspension period has expired. I cannot imagine why someone would want to pay $20 periodically for a useless license, see 23 V.S.A. § 608(a), when a state identification card is available for a one-time fee of $5, see 7 V.S.A. § 601.

More importantly, the majority's statement only underscores the problems it has created. Under the majority's rationale, defendant can display the universal symbol of entitlement to drive at the same time that he is legally prohibited from driving. For example, he can drive through a DUI roadblock, assuming he is sober at the time, with the police relying on his current license. In my judgment, the trial court's actions would be much more effective if it prohibited defendant from holding a license, but that would eliminate the artificial distinction the majority uses to uphold the probation order.

Unlike the majority, I do not believe that the district court's general power to impose reasonable probation conditions overrides the Legislature's detailed statutory scheme governing license suspension and restoration. I agree with the majority that the separation-of-powers doctrine does not contemplate a hermetic seal between each branch of government, and that criminal sentencing is a shared responsibility among the separate branches of government. But in this particular area, the Legislature has spoken. While the courts may impose lesser restrictions on operating privileges (for instance, restricting a defendant's driving privileges to certain times of the day or for certain purposes such as work), only the Commissioner has the

authority under the statutory framework to suspend, revoke, or reinstate the right to drive pursuant to specific statutory mandates.

Other jurisdictions agree that where there are specific, well-defined statutory procedures for the suspension of licenses, a condition of probation resulting in a de facto license suspension is improper. See *Sheppard v. State*, 685 A.2d 1176, 1177-78 (Md. 1996) (examining cases). In *Sheppard*, the Maryland Supreme Court acknowledged that some jurisdictions have upheld probation conditions forbidding defendants from driving "by finding express legislative delegation of authority to a sentencing judge to restrict driving privileges." *Id.* at 1177. But the court reasoned that the Maryland legislature's provision of specific mechanisms and safeguards for reinstatement of suspended licenses delegated exclusive authority over suspension of driving privileges to the administrative agency specifically charged with that duty, and not with the trial courts. See *id.* at 1180-81.

The same rationale should apply in Vermont. Vermont law sets forth well-defined procedures for suspending and reinstating driver's licenses, and further gives the Commissioner exclusive authority to implement those procedures. Allowing judges to devise ad hoc probation conditions that amount to de facto suspensions threatens the integrity of this statutory scheme. The majority suggests that the challenged condition was reasonable, but a reasonableness inquiry is irrelevant because it presupposes the authority of the court to impose such a condition. See *City of Independence v. Tector*, 688 N.E.2d 276, 278 (Ohio Ct. App. 1996). When there is a detailed statutory scheme delegating regulation of procedures to an administrative agency, the general judicial power to impose reasonable probation conditions is limited. Accordingly, I would strike the challenged condition.

The tragic consequences of defendant's reckless conduct may suggest to some that the trial court should be allowed unlimited latitude in fashioning probation conditions to control his future behavior, and that defendant "deserves" any and all sanctions the court might impose, including a potential thirty-year de facto suspension of his driver's license. The issue in this case, however, is not whether the challenged probation condition was reasonable, but rather whether the district court has the authority to impose its own term of license suspension on defendant when the Legislature, precisely because judges were imposing inconsistent sanctions and thus undermining the effectiveness of Vermont's DUI laws, explicitly

and emphatically granted the Commissioner exclusive jurisdiction over license suspension, revocation and reinstatement.

I am authorized to say that Justice Dooley joins in this dissent.