*Matthew David Meyer v. State of Maryland*, No. 21, September Term 2015, Opinion by Greene, J.

*State of Maryland v. Helen C. Rivera*, No. 22, September Term 2015, Opinion by Greene, J.

**CRIMINAL LAW — PROBATION**

At sentencing, a judge may impose a no-driving restriction as a reasonable condition of probation.  To do so is neither an illegal sentence nor a violation of the separation of powers doctrine.  Accordingly, *Sheppard v. State*, 344 Md. 143 (1996) is overruled.

Circuit Court for Washington County
Case No. 21-K-03-32080
Circuit Court for Montgomery County
Case No. 123504
Argued: October 5, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 21 and No. 22
September Term, 2015

---

MATTHEW D. MEYER

v.

STATE OF MARYLAND

---

STATE OF MARYLAND

v.

HELEN C. RIVERA

---

Barbera, C.J.,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Harrell, Jr., Glenn T. (Retired,
        Specially Assigned),

JJ.

---

Opinion by Greene, J.

---

Filed: December 22, 2015

The issue before the Court is whether a trial court has the authority to restrict a defendant's driving privileges as a condition of probation. In *Matthew David Meyer v. State of Maryland*, the appellant, Matthew David Meyer ("Meyer"), appealed from the denial of his motion to correct an illegal sentence. He alleged that the special condition of probation that he not operate a motor vehicle in Maryland during the probationary term constituted an illegal sentence. In *State of Maryland v. Helen C. Rivera*, the respondent, Helen C. Rivera ("Rivera"), was convicted of two counts of second-degree assault and one count of failing to remain at the scene of an accident involving bodily injury. For each of the three counts, Rivera was sentenced to six months, suspended, and was placed on probation before judgment for the two assault counts. The trial judge placed Rivera on a two-year probationary term and, as a condition of probation, prohibited her from operating a motor vehicle. Rivera appealed to the Court of Special Appeals, arguing that the trial judge abused his discretion by imposing the no-driving condition of probation.[1] The State of Maryland filed a petition for writ of certiorari with this Court in the case of *Matthew David Meyer v. State of Maryland*, 442 Md. 194, 112 A.3d 373 (2015), as well as the companion case, *State of Maryland v. Helen C. Rivera*. We granted *certiorari* in both cases and consolidate them in this opinion to address the common questions of law and fact:

---

[1] Rivera also appealed the issue of whether the trial court abused its discretion and committed reversible error by denying Rivera's motion to strike the venire panel. The Court of Special Appeals held that Rivera waived her objection by expressing satisfaction when the jurors were selected and empaneled by the court. Rivera did not seek review of this aspect of the case in this Court.

1. Does a court have authority to restrict a defendant's driving privileges as a condition of probation where (a) the defendant consents to the conditions, or (b) the crime for which probation is imposed is not a traffic offense subject to "a specific statutory scheme of regulation delegated to the executive branch," such as DUI?

2. If *Sheppard v. State*, 344 Md. 143 (1996), prohibits a court from restricting a probationer's privilege to drive under the circumstances described above, should *Sheppard* be overruled?

Because we believe that the *Sheppard* case was wrongly decided, we need not answer the first question. Accordingly, we answer the second question in the affirmative and overrule our decision in *Sheppard*. In *Meyer*, we shall affirm the judgment of the Circuit Court for Washington County denying the appellant's motion to correct an illegal sentence. In *Rivera*, we shall reverse the judgment of the Court of Special Appeals holding that the no-driving condition of probation violated the separation of powers doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Matthew D. Meyer

On or about the evening of October 23, 2002, Meyer turned eastbound on Mount Aetna Road in Washington County and began tailgating the vehicle in front of him. In order to pass the vehicle, Meyer sped up dramatically and crossed the double yellow line into the westbound lane. The posted speed limit was 35 miles per hour. After passing the vehicle, Meyer continued to drive eastbound in the westbound lane at a minimum speed of 75 miles per hour and struck an oncoming Ford Ranger occupied by Gerald and Mary Dietrich. The

2

collision caused the Dietrichs' truck, traveling at a speed of about 24 miles per hour, to flip over on its side, skid in the reverse direction, and roll onto its roof about 40 feet from the site of impact. During the collision, Mr. Dietrich was ejected from his truck. He was later transported to Washington County Hospital and pronounced dead. Mrs. Dietrich was trapped in the upside down truck and pronounced dead at the scene of the collision. Meyer was also trapped in his vehicle, but was successfully extracted and flown to Shock Trauma in Baltimore. He survived the collision. At the time of this incident, Meyer had already amassed a series of traffic violations,[2] including an accident in May 2000 which left him paralyzed from the chest down. On November 19, 2003, Meyer pled *nolo contendere*[3] in the Circuit Count for Washington County to two counts of manslaughter by motor vehicle[4]

---

[2] Meyer began committing traffic violations in 1995, less than a month after he was first licensed to drive by the State of Maryland. These violations include, *inter alia*, citations for: failure to obey traffic signals/signs; speed in excess of the posted maximum, exceeding the maximum speed limit by 30 miles per hour; driving in a race or speed contest on a highway; exceeding the maximum speed limit by 10 miles per hour; and driving at a speed not reasonable and prudent.

[3] A plea of *nolo contendere* is "a plea stating that the defendant will not contest the charge but does not admit guilt or claim innocence." Md. Code (2001, 2008 Repl. Vol.), § 1-101(k) of the Criminal Procedure Article. In effect, a *nolo contendere* plea is an implied confession of guilt, and is equivalent to a guilty plea for the purposes of the underlying criminal case. *Cohen v. State*, 235 Md. 62, 69, 200 A.2d 368, 372 (1964).

[4] Md. Code (2002, 2012 Repl. Vol.), § 2-209(b) of the Criminal Law Article states that "[a] person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner."

("vehicular manslaughter").[5]  As a result, the Circuit Court sentenced Meyer to a total of fourteen years of incarceration, seven of which were suspended, and imposed three years of unsupervised probation with a special condition.  In pertinent part, Judge W. Kennedy Boone, III stated:

> [Meyer] will not be allowed to operate a motor vehicle, and I can only order in [] the State of Maryland, [that he not] operate a motor vehicle, obviously during the time of his confinement, [and] during the time of any probation. Now that's always subject to show cause, or whatever, but I think that is appropriate.  Everything he's done has been motor vehically [sic] related ….

Meyer signed the Probation Order to indicate his consent to the condition that he "not be allowed to operate a motor vehicle in the State of Maryland."

On or about October 7, 2008, Meyer's probation commenced following his release from prison.  During the probationary period, on April 20, 2010, Meyer obtained a driver's license from the Motor Vehicle Administration ("MVA").  About two months later, while still on probation, Meyer operated a motor vehicle traveling at a speed of 84 miles per hour in a 40 mile per hour zone.  The State Trooper who stopped the vehicle driven by Meyer issued him a citation for driving at an unreasonable speed.  Again, on July 4, 2010, Meyer was stopped by a police officer for failing to use the headlamps while operating a motor vehicle.  As a result of these traffic violations, Meyer was charged with violating the special condition of his earlier probation.  At the violation of probation hearing on February 16,

---

[5] At the time of the 2002 collision, Meyer was on probation for a prior felony conviction. Meyer admitted that his plea of *nolo contendere* to two counts of vehicular manslaughter triggered a violation of his probation.

4

2011, he admitted to driving in the State of Maryland and to the commission of the traffic violations. Meyer, however, moved to dismiss the action, asserting for the first time that the condition of probation prohibiting him from driving in the State of Maryland, even though imposed in 2003, agreed to by him, and effective upon his release from prison in 2008, was illegal. On March 7, 2011, Judge Boone issued an Opinion and Order in response to Meyer's motion to dismiss. The court determined that Meyer violated his probation based on his admission of operating a motor vehicle in the State of Maryland. Judge Boone explained his decision:

> In the case at bar, the special condition imposed by the [c]ourt was made part of his probation order. There was consent to the condition as evidenced by [Meyer's] signature, and there was no appeal of the condition, or alleging the condition being plain error. In addition, the condition was clear and could be understood by all those who read it. The condition also seems proper when considering that [Meyer] became debilitated, both mentally and physically, due to driving at excessive speeds, and killing two people due to driving at excessive speeds, and after being released from prison he was apprehended for traveling at an excessive high rate of speed. Also the condition appears appropriate in the context of public safety and [Meyer's] history of high speed moving violations and accidents. The [c]ourt thought it best to restrict [Meyer's] driving due to his constant disregard for human life and his lack of the mental wherewithal necessary to comprehend the dangerousness of his actions of high speed due to his diagnosed physical and neurological disabilities.
>
> The [c]ourt did not divest power from the MVA, nor forbid [Meyer] from following the proper and necessary MVA procedures to re-acquire an operator's license from the MVA. The [c]ourt simply denied [Meyer] the right to drive within the State of Maryland to which [Meyer] acquiesced.
>
> After Judge Boone retired, Judge Daniel P. Dwyer of the Circuit Court for Washington

County conducted the sentencing hearing on the violation of probation. On May 18, 2011,

5

Judge Dwyer sentenced Meyer to seven years of incarceration, three and a half years

suspended, and placed him on two years of unsupervised probation with the condition that

he obey all laws.[6] At the sentencing hearing, Judge Dwyer explained in part:

> Judge Boone knew about your driving record . . . . He knew that you severely
> injured yourself a couple years before this tragic event. You injured yourself
> further Mr. Meyer from what I've read. More traumatic brain injury in the same
> accident that took the lives of Mr. and Mrs. Dietrich . . . . While it wasn't an
> intentional killing, it was a wanton and willful disregard . . . . And I believe
> Judge Boone was trying to fashion a sentence not so much to punish Mr. Meyer
> but to protect the public which I think [is] our number one sacred duty as judges
> is [sic] to try to prevent harm to the citizens of our country . . . .

Taking the above into consideration, Judge Dwyer fashioned a sentence that would "give

Mr. Meyer every incentive not to operate a motor vehicle again."

Approximately three years later, on April 18, 2014, Meyer filed a Motion to Correct

an Illegal Sentence under Maryland Rule 4-345(a).[7] Judge Dwyer denied this motion after

a hearing on June 24, 2014 and explained his decision:

> I very much respect the Constitution, and I don't want to tread on the province
> of the Executive Branch, who under the Motor Vehicle Administration rules

---

[6] The probation order included a handwritten note specifying that Meyer obey all motor vehicle laws and that a ticket for going even one mile over the speed limit would constitute a violation of probation.

[7] On June 17, 2011, Meyer timely filed an Application for Leave to Appeal from the Order revoking his probation in the Circuit Court for Washington County. The Court of Special Appeals granted his petition on January 31, 2013. In an unreported opinion, the intermediate appellate court dismissed the appeal under *Savoy v. State*, 336 Md. 355, 648 A.2d 683 (1994), concluding one may not challenge the legality of a condition of his or her probation in an application for leave to appeal. The Court of Special Appeals noted that its dismissal did not preclude Meyer from filing a motion to correct an illegal sentence under Rule 4-345(a).

decides who gets to drive and who doesn't get to drive. The [] [c]ourt cannot issue an illegal sentence. I think that would be more akin to a sentence where the statutory maximum is a year in jail, and the defendant agrees and the judge sentences that defendant to two years in jail . . . . Mr. Meyer agreed to these conditions of probation in lieu of getting this full sentence imposed on him without any portion of it suspended. He is now [] after violating that specific condition of probation by not only driving a motor vehicle, but I think the facts were speeding again, that he is estopped from complaining about it now . . . . But I agree with the analysis that Judge Boone made. I do not find this to be an illegal sentence.

On July 1, 2014, Meyer timely appealed the denial of his motion to correct an illegal sentence. Pending the appeal and prior to any proceedings in the Court of Special Appeals, we granted *certiorari*. *Matthew D. Meyer v. State of Maryland*, 442 Md. 194, 112 A.3d 373 (2015).

## B. Helen C. Rivera

On June 3, 2013, Rivera was driving a black SUV northbound on Beach Drive in Bethesda, Maryland. As Rivera approached a group of bicyclists who were riding on the street, she began to drive aggressively. Upon passing the first bicyclist, Rivera swerved the SUV in the bicyclist's direction and slammed on her brakes. The bicyclist was able to avoid falling or colliding with the SUV. Rivera then repeated this behavior with a second bicyclist, using her SUV to physically push the bicyclist off the roadway. Rivera yelled, "There's a bike path for people like you!" After being struck by the SUV, the second bicyclist fell to the ground, injuring his left rotator cuff and sustaining numerous abrasions. Instead of stopping, Rivera fled the scene and drove home.

On September 12, 2013, a Montgomery County Grand Jury indicted Rivera for

7

criminal and traffic offenses: two counts of second-degree assault; one count of failure to remain at the scene of an accident involving bodily injury; one count of reckless driving; and one count of negligent driving.

On February 4, 2014, during criminal proceedings in the Circuit Court for Montgomery County, a jury found Rivera guilty of two counts of second-degree assault under Md. Code (2002, 2012 Repl. Vol., 2015 Cum. Supp.), § 3-203 of the Criminal Law Article, and one count of failing to remain at the scene of an accident involving bodily injury under Md. Code (1977, 2012 Repl. Vol.), § 20-102(a) of the Transportation Article. The State entered a *nolle prosequi* as to the reckless driving and negligent driving charges. On February 28, 2014, Judge Terrence J. McGann of the Circuit Court sentenced Rivera to six months, suspended, for each count of second-degree assault. The sentencing judge, specific to the two counts of assault, granted Rivera's motion to be placed on probation before judgment. For the one count of failure to remain at the scene, Rivera was sentenced to six months, suspended, to run concurrent to the sentence for the assault counts. The Circuit Court ordered a two-year period of probation, fined Rivera $350, and imposed a special condition of probation: Rivera was prohibited from driving a motor vehicle until "February 27, 2015 or until [the] Motor Vehicle Administration permits you[, Rivera,] to drive, whichever is later in time." The sentencing judge elaborated: "So if [the] MVA says [] [you] can drive tomorrow [] [you] can't drive for a year. If after a year[, however, the] MVA's still got her suspended[,] she still can't drive . . . ." Rivera consented to the terms of probation

8

and signed the probation order.

On July 29, 2015, the MVA held an administrative hearing and suspended Rivera's license for thirty days.

Rivera appealed the no-driving special condition of probation to the Court of Special Appeals, contending that the restriction on driving rendered her sentence illegal.[8] In an unreported opinion, our brethren on the Court of Special Appeals held that *Sheppard* was controlling and concluded that "the trial court abused its discretion in suspending Rivera's driving privileges . . . ." In an unreported opinion, the intermediate appellate court reasoned that under the statutory scheme established by the General Assembly, the authority to restrict driving privileges is delegated solely to the MVA, not the Judiciary. Further, the court held that the trial court had exceeded its authority by, in effect, revoking Rivera's driver's license because the no-driving special condition "significantly undermine[s] the effectiveness of the legislatively-empowered MVA." Rivera's case was then remanded to the Circuit Court with directions to that court to vacate the no-driving condition of probation.

We granted *certiorari* to address the issues raised in the State's petition in *State v.*

---

[8] Of the three convictions, Rivera was only eligible to appeal the conviction for failure to remain at the scene of the accident involving bodily injury. Rivera waived her right to appeal the two counts of assault because she had been granted probation before judgment. Pursuant to Md. Code (2001, 2008 Repl. Vol., 2015 Cum. Supp.), § 6-220(e) of the Criminal Procedure Article, "[b]y consenting to and receiving a stay of entering of the judgment . . . the defendant waives the right to appeal at any time from the judgment of guilt."

*Helen C. Rivera*, 442 Md. 194, 112 A.3d 373 (2015).[9]

## STANDARD OF REVIEW

First, whether the no-driving condition of Meyer's sentence is an illegal sentence under Rule 4-345(a) is a question of law, which we will review *de novo*. *Bonilla v. State*, 443 Md. 1, 6, 115 A.3d 98, 100 (2015); *see also Blickenstaff v. State*, 393 Md. 680, 683, 904 A.2d 443, 445 (2006).

Second, because a "trial court does not have unlimited discretion to order conditions of probation," we review Rivera's no-driving condition of probation under an abuse of discretion standard. *Bailey v. State*, 355 Md. 287, 294, 734 A.2d 684, 687 (1999). *See Towers v. State*, 92 Md.App. 183, 607 A.2d 105 (1992) (striking a condition of probation that prohibited the defendant from working in a pharmacy without the court's permission).

## DISCUSSION

Relying on our decision in *Sheppard v. State*, 344 Md. 143, 685 A.2d 1176 (1996), Meyer argues that the no-driving condition of probation imposed by the trial court here is illegal because the court's order encroached on the exclusive authority of the MVA. He

_____

[9] During oral arguments, the issue of mootness arose. Initially, the State answered that the case may be moot, but, after argument, the State notified this Court and the opposing party that the case is not moot and is ripe for decision. Although the MVA suspended Rivera's driver's license for thirty days and the durational period for the no-driving condition has elapsed, Rivera is still on probation. The State continued, "[w]ith the possibility of the revocation of Respondent's probation still present, the controversy concerning the circuit court's authority to order this condition of probation remains active and warrants a decision on the merits by this Court." Rivera did not respond to the issue of mootness.

explains that even though he initially consented to the no-driving condition of probation, he cannot be convicted of violating the condition because one cannot consent to an illegal sentence.

The State counters that this Court's holding in *Sheppard* does not provide that a no-driving condition of probation is an illegal sentence nor does it prohibit a trial court from imposing a no-driving condition with a defendant's consent. Instead, the State maintains, the *Sheppard* Court held that the trial judge abused his discretion by imposing as a condition of probation that the defendant not operate a motor vehicle, even if the MVA reinstated her driver's license. *Sheppard v. State*, 344 Md. 143, 685 A.2d 1176 (1996). The State also argues that *Sheppard* is distinguishable because it applied a different standard of review—an abuse of discretion standard for a direct appeal from a no-driving condition—and did not address the effect of a defendant's consent to a condition of probation. Because *Sheppard* does not control and a conviction for vehicular manslaughter is not subject to a "specific statutory scheme of regulation delegated to the executive branch," the State concludes that this Court should hold that the no-driving condition of probation, which Meyer consented to, is reasonable and rational.

In *Rivera*, the State initially argues that *Sheppard* is not controlling because it is a narrow opinion limited only to driving under the influence ("DUI") offenses—an area heavily regulated by a "specific statutory scheme"—and is inapplicable because *Rivera* does not involve a DUI conviction. In the State's view, the sentencing judge exercised his broad

11

discretion to impose reasonable conditions of probation under the circumstances. *See* Md. Code (2001, 2008 Repl. Vol.), § 6-221 of the Criminal Procedure Article (allowing trial courts to impose terms the "court considers proper"). The State points out, however, that the discretion of a judge is not boundless. *See* Rule 4-345 ("The court may correct an illegal sentence at any time."); *Poe v. State*, 341 Md. 523, 532, 671 A.2d 501, 505 (1996) ("A trial judge's discretion is limited only by constitutional standards and statutory limits."). Additionally, the State contends that the Court of Special Appeals, in the present case, failed to appreciate the distinction between a sentencing judge restricting a defendant's ability to drive and a judge attempting to formally suspend or revoke a driver's license. Because the trial court in the instant case only imposed the former, the State contends that no separation of powers issue arises.

Rivera, however, disagrees and asks this Court to affirm the ruling of the intermediate appellate court in concluding that the restriction on Rivera's driving privilege was an abuse of discretion. Further, Rivera maintains that the Court of Special Appeals was correct in finding *Sheppard* to be controlling and, thus, a limitation on a judge's discretion to impose conditions of probation. She posits that the *Sheppard* Court stated:

> The Transportation Article clearly and specifically sets the MVA administrative hearing procedures, suspension and revocation penalties, as well as manner of restoration of driving privileges for those convicted of driving under the influence. This specific statutory scheme of regulation delegated to the executive branch controls over the general statute authorizing a court to impose conditions of probation.

344 Md. at 154, 685 A.2d at 1181. Rivera parallels her case with *Sheppard*, and presses this

12

Court to hold that the MVA has the sole authority to restrict driving privileges. For support, Rivera also cites Md. Code (1977, 2012 Repl. Vol.), § 11-128 of the Transportation Article, which defines a "license" as the "privilege of any individual to drive a motor vehicle, whether or not that individual is formally licensed by this or any other jurisdiction . . . ." Rivera further posits that the imposition of the no-driving condition is a violation of the separation of powers doctrine because the Judiciary has encroached on the powers of the MVA, an executive branch agency, which has the sole authority to restrict driving privileges. In sum, Rivera contends, "[w]hile the trial court may have wide discretion at sentencing, restricting the defendant's driving privileges violates the Maryland Declaration of Rights and is therefore not within the trial court's discretion."

### Overruling *Sheppard v. State*

In *Sheppard v. State*, the defendant was convicted of two counts of DUI under Md. Code (1977, 1992 Repl.Vol.), § 21-902(b) of the Transportation Article. 344 Md. 143, 144, 685 A.2d 1176, 1176–77 (1996). At sentencing, Sheppard received a suspended sentence and was placed on probation for three years.[10] *Sheppard*, 344 Md. at 145, 685 A.2d at 1176.

---

[10] For each count, Sheppard received a one-year concurrent sentence, with all but 60 days suspended. In addition to the no-driving condition of probation, the court imposed other conditions, including "'alcohol counseling as may be directed by her probation officer, . . . mandatory attendance at AA at least four times weekly,' random urinalysis, and the requirement that she 'not . . . possess or consume any alcoholic beverages.'" *Sheppard*, 344 Md. at 145, 685 A.2d at 1176. Sheppard was also ordered to pay a five-hundred dollar fine. Sheppard appealed the no-driving condition to the Court of Special Appeals. Before the intermediate appellate court could rule on the issue, this Court issued a writ of certiorari.

As a special condition of probation, Sheppard was prohibited temporarily from operating a motor vehicle. *Sheppard*, 344 Md. at 145, 685 A.2d at 1177. Specifically, the judge stated, "I'm going to order [] [the defendant] to not operate a motor vehicle while on probation . . . . Even if the [M]otor [V]ehicle [A]dministration gives you back your license, you cannot drive, because my order says you can't." *Id.*

The *Sheppard* Court granted *certiorari* to answer whether it was an abuse of discretion for the sentencing judge to impose the no-driving condition during the probationary period. *Sheppard v. State*, 341 Md. 719, 672 A.2d 659 (1996). Relying on preemption and separation of powers grounds, the Court held that it was an abuse of discretion because the General Assembly conferred the power to suspend and reinstate driving privileges to the MVA, an Executive branch administrative agency. *Sheppard*, 344 Md. at 148, 685 A.2d at 1178. The Court inferred that the enactment of the Transportation Article[11] is evidence of the legislative intent to preempt the Judiciary from imposing a no-driving condition. The *Sheppard* Court explained that only the Executive branch, by way of its administrative agency, had the power to "govern[] driver's license suspension, revocation and reinstatement." *Sheppard*, 344 Md. at 149, 685 A.2d at 1179. The act of imposing a no-driving condition of probation, therefore, violated the separation of powers doctrine, because

---

[11] The Transportation Article "provides a comprehensive set of statutes regulating motor vehicles and persons who drive motor vehicles in the state of Maryland[,]" including "a very detailed statutory scheme governing driver's license suspension, revocation and reinstatement" and "various penalties for certain driving offenses as well as time limitations on the suspension of a license." *Sheppard*, 344 Md. at 148–49, 685 A.2d at 1178–79.

14

the Judiciary was impermissibly encroaching on an area of law reserved for the Executive branch. *Sheppard*, 344 Md. at 154, 685 A.2d at 1181.

In error, this Court drew support for its holding by analogizing the facts in *Sheppard* with those in *Towers v. State*, 92 Md. App. 183, 607 A.2d 105 (1992), and holding that a similar "very detailed statutory scheme" limited the broad discretion of a sentencing judge's ability to fashion conditions of probation. *Sheppard*, 344 Md. at 149, 685 A.2d at 1179. The *Sheppard* Court explained: "By analogy [with *Towers v. State*], in the instant case, the legislature has left the decision to suspend one's driving privileges to the MVA and not to the Circuit Court for Worcester County." 344 Md. at 148, 685 A.2d at 1178.

The *Sheppard* Court misconstrued *Towers* and, therefore, wrongly decided the case before it. *Towers*, as we shall discuss below, is an "outlier" case, because, traditionally, when a member of the judiciary imposes a condition of probation, the probation order is specific to the regulation of the defendant's conduct and does not interfere with the authority of another branch of government. Unlike *Towers*, the facts in *Sheppard* did not evidence a violation of the separation of powers doctrine. No direct challenge to the licensing authority existed. The no-driving condition itself did not usurp the authority of the MVA nor did the judge attempt to order the MVA to suspend Sheppard's driver's license. Simply put, the no-driving condition did not invalidate the driver's license. Critically, the sentencing judge sought only to restrict the defendant's physical ability to drive, which is different than a court ordering the formal suspension of one's driver's license. Consequently, the *Sheppard* Court

15

should have decided the case solely on abuse of discretion grounds, and not on separation of powers grounds.

The *Sheppard* Court erred in holding that the enactment of the Transportation Article preempted the Judiciary from imposing the no-driving condition. Although the Transportation Article confers power on the MVA to regulate the issuance of driver's licenses as well as suspensions, revocations and reinstatements, the language of the statutory scheme does not suggest or expressly restrict the broad discretion of a sentencing judge to place restrictions on one's driving privileges as a condition of probation. As such, the *Sheppard* Court erred by implying legislative intent to curtail the power of the Judiciary in this area. The Executive branch and the Judiciary have shared authority to regulate driving privileges, but only the Executive branch has the authority to issue, suspend, revoke and reinstate a driver's license. The Judiciary, however, has the discretion, where appropriate, to restrict a defendant's standard of conduct, which includes prohibiting one's ability to operate a motor vehicle as a condition of probation. The *Sheppard* Court clearly overlooked the shared authority of the two branches in this instance. Both the Executive branch and the Judiciary may make decisions that adversely affect one's driving privileges, however, the manner in which each branch may do so, as explained above, differs.

In addition, we overrule *Sheppard* because its rationale grounded in the separation of powers doctrine was clearly wrong. "Stare decisis means 'to stand by the thing decided,' and is 'the preferred course because it promotes the evenhanded, predictable, and consistent

16

development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *State v. Waine*, 444 Md. 692, 699–700, 122 A.3d 294, 298 (2015), *reconsideration denied* (Oct. 15, 2015) (citing *Livesay v. Baltimore Cnty.*, 384 Md. 1, 14, 862 A.2d 33 (2004)). "Our devotion to stare decisis . . . is not absolute." *State v. Stachowski*, 440 Md. 504, 520, 103 A.3d 618, 627 (2014). "We have recognized two circumstances when it is appropriate for this Court to overrule its own precedent. First, this Court may strike down a decision that is, 'clearly wrong and contrary to established principles.'" *DRD Pool Serv., Inc. v. Freed*, 416 Md. 46, 64, 5 A.3d 45, 55 (2010) (quoting *State v. Adams*, 406 Md. 240, 259, 958 A.2d 295, 307 (2008)). "[I]t is sometimes advisable to correct a decision or decisions wrongly made in the first instance, if it is found that the decision is clearly wrong and contrary to other established principles." *Townsend v. Bethlehem-Fairfield Shipyard*, 186 Md. 406, 417, 47 A.2d 365, 370 (1946). We may also depart from stare decisis when "there is a showing that the precedent has been superseded by significant changes in the law or facts." *DRD Pool Serv., Inc. v. Freed*, 416 Md. at 64, 5 A.3d at 56 (citing *Livesay v. Baltimore Cty.*, 384 Md. at 15, 862 A.2d at 41 (2004)). *See Bozman v. Bozman*, 376 Md. 461, 467–68, 830 A.2d 450, 454 (2003) (abrogating the interspousal immunity doctrine because it "is an antiquated rule of law which . . . runs counter to prevailing societal norms").

We overrule *Sheppard* and disavow its extensive emphasis on the effect of the

"specific statutory scheme of regulation."[12]  That discussion  was superfluous, because the facts failed to demonstrate that the Judiciary was challenging the licensing authority of the Executive branch.  The validity of the no-driving condition of probation should have been decided solely on abuse of discretion grounds.  "When imposing probation conditions, '[a] judge is vested with very broad discretion . . . [in order] to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation[,]' and is 'limited only by constitutional standards and statutory limits." *Henson v. State*, 212 Md. App. 314, 327, 69

---

[12] The *Sheppard* analysis suggests that when a criminal defendant is convicted of an offense, or subject to a penalty, under the Transportation Article, that statutory provision then precludes the Judiciary from imposing a no-driving condition of probation.  This interpretation may lead to the unnecessary foreclosure of a sentencing judge's discretion to impose reasonable conditions of probation, even in cases that do not involve DUI convictions.  While Meyer was not convicted of any violations under the Transportation Article, he is still subject to its provisions.  Meyer pled *nolo contendere* to two counts of vehicular manslaughter under § 2-209(b) of the Criminal Law Article.  "A person who violates [Criminal Law Article § 2-209] is guilty of a felony."  Md. Code (2002, 2012 Repl. Vol.), § 2-209(d) of the Criminal Law Article.  Additionally, Md. Code (1977, 2012 Repl. Vol., 2015 Cum. Supp.), § 16-402(a)(38) of the Transportation Article states that a defendant "shall be assessed" twelve points by the MVA for the commission of a "felony involving use of a vehicle."  Thus, Meyer is subject to the Transportation Article's statutory scheme.  Rivera is also subject to the statutory scheme because, in addition to being convicted of two counts of second-degree assault, Rivera was also convicted of an offense under Transportation Article § 20-102(a).  That particular conviction subjects Rivera to a twelve point assessment by the MVA pursuant to Md. Code (1977, 2012 Repl. Vol., 2015 Cum. Supp.), § 16-402(a)(33) of the Transportation Article.  Under the *Sheppard* rationale, it would seem that any offense or penalty under the Transportation Article, such as an assessment of points for motor vehicle violations, would preempt the Judiciary from imposing a reasonable and otherwise permissible condition of probation, because a defendant would be subject to a statutory scheme within the exclusive authority of the MVA.  This result is inconsistent with Maryland's interpretation of the elasticity of the separation of powers doctrine, which will be discussed below.

18

A.3d 26, 34 *cert. denied*, 434 Md. 314, 75 A.3d 319 (2013) (quoting *Poe v. State*, 341 Md. 523, 531–532, 671 A.2d 501 (1996)). "[A] condition of probation must not be vague, indefinite or uncertain." *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986).

The sentencing judge prohibited Sheppard from driving a motor vehicle in Maryland throughout her three-year probationary period. Today, we cannot say that it was an abuse of discretion for the court to impose as a special condition that a criminal defendant convicted of two counts of DUI, who had previously demonstrated she was a danger to public safety when operating a motor vehicle, may not drive during the period of her probation.

### *Towers v. State* **and the Separation of Powers Doctrine**

*Towers v. State* is distinguishable from *Sheppard* because *Towers* involved an impermissible direct challenge to the validity of a licensing authority—a clear violation of the separation of powers doctrine. 92 Md. App. 183, 607 A.2d 105 (1992). There, the sentencing judge expressly undermined the authority of the State Board of Pharmacy, an administrative agency established by the Legislature and responsible for regulating the pharmaceutical profession, by prohibiting the pharmacist-defendant from working in a pharmacy without the court's permission even if the State Board of Pharmacy reinstated his pharmacy license.[13] It is without question the province of the State Board of Pharmacy to

---

[13] The sentencing judge stated "I find it appalling that the Pharmacy Board would consider ever giving you back a pharmacy license. That's the[ir] business but I know this much, you should not work in a pharmacy without Court permission even if you have your license . . . [because] you can't be trusted with the license." *Towers*, 92 Md. App. at 188, 607 A.2d at

(continued...)

19

regulate the practice of the pharmaceutical profession, including the licensing of pharmacists and enforcing pharmacy practice standards. The probation condition was an intentional disregard of the explicit role of the State Board of Pharmacy because the sentencing judge, in effect, placed the judiciary in a position superior to that of the Executive branch, even though the General Assembly had clearly carved out a very specific role for the administrative agency in that circumstance.

*Sheppard* lacked this confrontation between two branches of government. There, the no-driving condition did not interfere with or undermine the licensing authority of the MVA, but, rather, only regulated Sheppard's standard of conduct in a reasonable manner for the duration of the probationary period. The stark contrast between the conditions of probation between *Sheppard* and *Towers* is illuminated by the relationship of two principles, which normally operate harmoniously and in unison: (1) the broad discretion of a trial judge to sentence a criminal defendant, including fashioning reasonable conditions of probation, and (2) the elasticity of the separation of powers doctrine. In overruling *Sheppard* and applying the abuse of discretion standard, these two concepts operate concurrently and allow the Judiciary to impose no-driving conditions of probation where appropriate. In *Towers*, however, the principles are adversarial to one another, which is why the intermediate appellate court held the condition violated the separations of powers doctrine. To further

---

[13](...continued)
107–08.

understand the interrelationship of these principles, it is necessary to examine the underpinnings of the separation of powers doctrine.

The constitutional principle of separation of powers is integral to our tripartite system of government. In Maryland, this doctrine is embodied in Article 8 of the Maryland Declaration of Rights.[14] The doctrine does not, however, rigidly establish strict lines of demarcation between the three branches of government. "Since the beginning of our constitutional democracy, this Court has recognized that the respective powers of the legislative, executive and judicial branches of government are not 'wholly separate and unmixed.'" *McCulloch v. Glendening*, 347 Md. 272, 283–84, 701 A.2d 99, 104 (1997) (citing *Crane v. Meginnis*, 1 G. & J. 463, 476 (1829)). "Art. 8 of the Maryland Declaration of Rights does not impose 'a complete separation between the branches of government.'" *Judy v. Schaefer*, 331 Md. 239, 261, 627 A.2d 1039, 1050 (1993) (citing *Dep't of Transp. v. Armacost*, 311 Md. 64, 81, 532 A.2d 1056, 1064 (1987)). In the past, we have addressed the flexibility of this doctrine as applied to administrative agencies:

> In response to the practical needs of government, not only has there been an extensive introduction of these administrative agencies in this State, . . . but in addition, as a consequence of this need, there has occurred within these agencies some mingling, blending and overlapping of the legislative, executive and judicial functions. We believe this to be permissible, within limits, as the separation of powers concept may constitutionally encompass a sensible degree of elasticity and should not be applied with doctrinaire rigor.

---

[14] "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." Md. Decl. of Rts. art. 8.

21

*Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 220, 334 A.2d 514, 521 (1975). The doctrine's flexibility accounts for the complexities of our tripartite system; however, the elasticity of the doctrine is not without limits:

> [T]his constitutional "elasticity" cannot be stretched to a point where, in effect, there no longer exists a separation of governmental power, as the Maryland Constitution does not permit a merger of the three branches of our State government, nor does it "make any one of the three departments subordinate to the other, when exercising the trust committed to it."

*Id.*

In Maryland, we have applied this "sensible degree of elasticity" when alleged violations of the separation of powers doctrine occurred. There have been clear examples of the doctrine's flexibility being stretched beyond its limits. Such was the case in *Towers v. State*, where, as explained above, the Court of Special Appeals held the sentencing judge encroached upon an area reserved to the Executive branch. 92 Md. App. 183, 607 A.2d 105 (1992). *Leopold v. State* is another example of the Judiciary overstepping its bounds and invading the province of another branch of government. 216 Md. App. 586, 88 A.3d 860 (2014).

In *Leopold*, the defendant was a public official who had been convicted of two counts of misconduct in office. The sentencing judge abused his discretion when he imposed a special condition of probation that prohibited the defendant from running as a "candidate for any local, state, or federal elected office." *Leopold*, 216 Md. App. at 590, 88 A.3d at 862. The condition itself challenged the validity of a statutory scheme in place—the Election Law

22

Article and the Maryland Constitution—which regulate the eligibility and removal of public officials in Maryland. The Court of Special Appeals held that the special condition violated the separation of powers doctrine, because even though the defendant was "qualified and eligible to run for office" pursuant to that statutory scheme, the Judiciary was interfering with this process by creating additional barriers to prevent the defendant from pursuing candidacy for public office. *Leopold*, 216 Md. App. at 611, 88 A.3d at 874. Again, *Sheppard* is distinguishable from *Leopold* because *Sheppard* did not challenge the authority of the MVA to issue, suspend, revoke or reinstate driving privileges. In fact, the sentencing judge did not attempt to prohibit Sheppard from pursuing the reinstatement of her driver's license if the MVA decided to suspend it. The condition simply restricted Sheppard's physical ability to operate a motor vehicle.

In contrast to *Towers* and *Leopold*, we have also recognized shared authority between the branches: "some mingling, blending and overlapping of the legislative, executive and judicial functions." *Linchester*, 274 Md. at 220, 334 A.2d at 521. "Our own cases have never interpreted the separation of powers doctrine embedded in Article 8 of the Maryland Declaration of Rights as imposing a complete separation between the branches of government." *Armacost*, 311 Md. at 81, 532 A.2d at 1064. *See Armacost*, 311 Md. at 75, 532 A.2d at 1061 (holding no separation of powers violation occurred where the Legislature enacted the Vehicle Emissions Inspection Program, and delegated legislative authority to the MVA and the Dep't of Health and Mental Hygiene); *McCulloch v. Glendening*, 347 Md. 272,

701 A.2d 99 (1997) (holding the Governor acted within his discretionary power and did not usurp legislative authority in issuing an executive order that granted limited collective bargaining rights to Executive branch employees). This shared authority is also present in the facts in *Sheppard*, which is why we overrule that holding.

In fashioning conditions of probation, the Judiciary may impose reasonable conditions of probation where appropriate to curtail a criminal-defendant's physical ability to operate a motor vehicle. A criminal defendant may be "regulated by the standard of conduct imposed by the sentencing judge . . . ." *Hudgins v. State*, 292 Md. 342, 348, 438 A.2d 928, 931 (1982). A no-driving condition does not ordinarily subordinate the authority vested in the MVA by the Legislature, because it reflects the concurrent and harmonious relationship between the two principles discussed above: (1) the broad discretion of a judge to sentence a criminal defendant and (2) the elasticity of the separation of powers doctrine. This overlap of shared authority is present in *Sheppard*, *Meyer* and *Rivera.* For example, in these cases, the Judiciary did not purport to authorize driving privileges for an individual who had been denied these privileges by the MVA. Conversely, the sentencing judges imposed restrictions on the ability to operate a motor vehicle in the State of Maryland, even if the MVA had issued a driver's license. This imposition of restrictions on the ability to operate a motor vehicle during the probationary term is analogous to the imposition of a mandatory incarceration that is the length of the probationary term.

In Maryland, when the General Assembly has placed limits on the court's sentencing

24

authority, it has done so explicitly.[15] Here, there is nothing to indicate in the Transportation

Article a legislative intent to limit the court's broad authority to impose a no-driving

condition of probation.

> The general principles of statutory interpretation are well established, as our goal is to identify and effectuate the legislative intent underlying the statute . . . . To ascertain the Legislature's intent, we first examine the plain language of the statute; if the language is unambiguous when construed according to its ordinary meaning, then we will "give effect to the statute as it is written." . . . . If a statute's language has more than one reasonable interpretation, however, the language is ambiguous, and we will resolve any ambiguity in light of the legislative history, caselaw, and statutory purpose.

*Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 419–20, 918 A.2d 470, 482

(2007) (internal citations omitted). Because the statutory scheme in *Sheppard* was

unambiguous, this Court erred in going beyond the plain meaning of the Transportation

Article, and inferring a legislative intent to preempt the Judiciary that was not expressed by

the General Assembly.

The Transportation Article provides various grounds under which the MVA may

issue, suspend, revoke and reinstate a driver's license. These provisions, however, do not

---

[15] For example, Md. Code (2001, 2008 Repl. Vol., 2015 Cum. Supp.), § 6-222 of the Criminal Procedure Article describes the circumstances under which a court may order a period of probation that is longer than the sentence or extend probation for the purposes of restitution or treatment. Additionally, the revisor's note to § 6-222 indicates that the language in the previous version of the statute referring to "a criminal or motor vehicle case within the court's jurisdiction" was replaced by language referring to the authority of "[a] Circuit Court or the District Court" because "motor vehicle cases are criminal cases." 2001 Md. Laws Ch. 10. This suggests a lack of legislative intent to curtail judicial sentencing authority for offenses involving motor vehicles merely because the offense is found in the Transportation Article.

preempt the court's broad discretion to foreclose a defendant from driving as a condition of probation. Rather, this is an area of shared authority consistent with the principles of constitutional elasticity and lack of legislative intent indicating otherwise. Both the Executive branch and the Judiciary may regulate driving privileges. Whereas only the MVA is authorized to issue, suspend, revoke and reinstate a driver's license, a sentencing judge may impose a particular standard of conduct for a defendant to follow while on probation that includes prohibiting the defendant from operating a motor vehicle, irrespective of the MVA's permitting decision(s). Under some circumstances, a court may even restrict a defendant's driving privileges by ordering, as a condition of probation, mandatory participation in the Ignition Interlock program.[16] Md. Code (2001, 2008 Repl. Vol., 2015 Cum. Supp.), § 6-220 of the Criminal Procedure Article. *See also* Md. Code (1977, 2012 Repl. Vol., 2015 Cum. Supp.), § 16-404.1 of the Transportation Article (recognizing different avenues by which a defendant may be required to participate in the program, including by court order). In pertinent part, Md. Code (1977, 2012 Repl. Vol.), § 27-107(b) of the Transportation Article states:

> [A] court may prohibit a person who is convicted of, or granted probation under § 6-220 of the Criminal Procedure Article for, a violation of §

---

[16] The Interlock Ignition program requires the defendant to have installed an Alcohol Breath-Analyzed Ignition Interlock Device in the motor vehicle he or she will operate, and breathe into the device prior to attempting to drive the vehicle. The device tests the defendant's breath for the presence of alcohol and "[p]revents a motor vehicle ignition from starting if a driver's blood alcohol level exceeds the calibrated setting on the device." Md. Code (1977, 2012 Repl. Vol., 2015 Cum. Supp.), § 27-107 of the Transportation Article.

21-902(a) or § 21-902(b) of this article from operating for not more than 3 years a motor vehicle that is not equipped with an ignition interlock system.

It is important to recognize the shared authority of the Executive branch and the Judiciary to restrict driving privileges because each branch may be concerned with different objectives. For example, a sentencing judge is guided by the "objectives of sentencing—punishment, deterrence and rehabilitation" in fashioning reasonable conditions of probation. *Dopkowski*, 325 Md. at 679, 602 A.2d at 1189. A judge may also have unique insight as to a criminal defendant's past that the MVA lacks because of its limited access to information and its scope of responsibility. Pursuant to Maryland Rule 4-346, in addition to being able to impose a reasonable and rational no-driving condition, a court may also modify or strike any condition of probation upon request.[17] In contrast, the objectives of the MVA, generally, are to administer and enforce the motor vehicle laws. *See* Md. Code (1977, 2012 Repl. Vol., 2015 Cum. Supp.), §§ 12-101–12-115 of the Transportation Article. For example, we have said that the suspension of a driver's license by the MVA serves a remedial purpose: "to protect the public from unscrupulous or unskilled operators who would otherwise engage in the licensed activity." *See Motor Vehicle Admin. v. Richards*, 356 Md. 356, 373, 739 A.2d 58, 68 (1999) (citing *State v. Jones*, 340 Md. 235, 251, 666 A.2d 128, 136 (1995)).

---

[17] "During the period of probation, on motion of the defendant or of any person charged with supervising the defendant while on probation or on its own initiative, the court, after giving the defendant an opportunity to be heard, may modify, clarify, or terminate any condition of probation, change its duration, or impose additional conditions." Md. Rule 4-346(b).

Other jurisdictions have similarly recognized this shared authority and ruled that a no-driving condition of probation does not violate the separation of powers doctrine. In *State v. Nelson*, the Supreme Court of Vermont rejected the argument that it should read into the law an implied legislative intent to preempt the Judiciary from imposing the no-driving condition versus a statutory scheme that conferred power to the Commissioner of Motor Vehicles to calculate the suspensions of driver's licenses, and that included a provision requiring a mandatory one-year suspension of a driver's license for a DUI-related offense. 742 A.2d 1248, 1249–50 (Vt. 1999). A sentencing court's broad authority to fashion conditions of probation "should not be usurped by mere implication" where "nothing in the statutory scheme, the language, or the legislative history" suggests a legislative intent to do so. *Nelson*, 742 A.2d at 1250–51. Recognizing the shared authority between the Judiciary and the Executive branch, the court also explained how each branch may have different objectives: the statutory scheme, for example, may "serve to punish the defendant, deter others, and protect the public safety" whereas probation "is designed primarily for individual rehabilitation." *Nelson*, 742 A.2d at 1252. *See also Davis v. State*, 688 So. 2d 996, 997 (Fla. Dist. Ct. App. 1997) (affirming a no-driving condition and a prohibition against obtaining a "hardship license" because "a court may impose a condition of probation that is reasonably related to the offense or to future criminality").

The Michigan intermediate appellate court in *City of Detroit v. Del Rio* found no abuse of discretion where a judge ordered six months no-driving as a condition of probation

resulting from the defendant's conviction for running a red light. 157 N.W.2d 324 (Mich. App. 1968). The court reasoned that "[t]he purposes of the code of criminal procedure . . . may coincide with the public aim of traffic safety but not necessarily so, and the [intermediate appellate court] finds nothing in the vehicle code designed to subordinate the purposes and powers of the courts under the code of criminal procedure to the purposes of the vehicle code." *Del Rio*, 157 N.W.2d at 326. In *Brock v. State*, the Georgia intermediate appellate court held no separation of powers violation occurred where, as a condition of probation for a traffic-related offense, the court suspended a defendant's driving privileges for twelve months and required the license to be surrendered to the court clerk. 299 S.E.2d 71, 72 (1983). That court noted the language of the statutory scheme governing the issuance, suspension and revocation of driver's licenses "is permissive rather than directory" and that "[i]n the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved." *Brock*, 299 S.E.2d at 72.

## PROBATION

Placing an individual on probation is a judicial act that arises out of the Judiciary's inherent sentencing function. *DeLeon v. State*, 102 Md. App. 58, 74, 648 A.2d 1053, 1060–61 (1994); *see also Simms v. State*, 65 Md. App. 685, 688–89, 501 A.2d 1338, 1340 (1986). It is well established that probation is considered to be a matter of grace and an act of clemency toward one who has violated the law. *Harrison-Solomon v. State*, 442 Md. 254,

29

286, 112 A.3d 408, 428 (2015); *see also Scott v. State*, 238 Md. 265, 275, 208 A.2d 575, 580 (1965).  Probation and its terms are derived from statutory authority.  *Bailey v. State*, 355 Md. 287, 293, 734 A.2d 684, 687 (1999).  Pursuant to Criminal Procedure Article § 6-221, a court may, upon judgment of conviction, "suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper."

While a trial court has broad authority to impose conditions of probation, this power is not unlimited.  *Bailey*, 355 Md. at 294, 734 A.2d at 687.  One such limitation is that the conditions of probation must be reasonable and have a rational connection to the offense.  *Brown v. State*, 80 Md. App. 187, 198, 560 A.2d 605, 610 (1989).  The condition of probation must also be constitutional.  *Kaylor v. State*, 285 Md. 66, 70, 400 A.2d 419, 422 (1979).  In furtherance of good behavior and public safety, the trial court may impose conditions upon the defendant's probation.  As long as the defendant abides by these conditions, he will retain his liberty.  *Gibson v. State*, 328 Md. 687, 690, 616 A.2d 877, 878 (1992).  As discussed, probation is not a matter of entitlement, but rather, it is a form of punishment that allows an offender to retain his or her liberty.  *Bailey v. State*, 327 Md. 689, 697– 98, 612 A.2d 288, 292 (1992).  Therefore, a defendant may be required to comply with a standard of conduct that limits his or her liberties to help the defendant avoid incarceration, become a productive member of society, and promote public safety.  *Turner v. State*, 307 Md. 618, 624, 516 A.2d 579, 582 (1986).

This Court discussed the validity of conditions of probation in *Hudgins v. State*, 292 Md. 342, 438 A.2d 928 (1982). In *Hudgins*, we recognized that a condition of probation is unenforceable if it is "so amorphous that it is not reasonable to say that the defendant's complained of action was regulated by the standard of conduct imposed by the sentencing judge . . . ." 292 Md. at 348, 438 A.2d at 931. Yet, we also noted that a general term of probation is permissible if the court or its designee provides a defendant with reasonable and specific guidance regarding the general term and the defendant understands what is required of him. *Id.*

As articulated by Judge Boone in his Opinion and Order, the condition that Meyer not operate a motor vehicle in the State of Maryland during his term of probation did not interfere with the validity of Meyer's driver's license or his ability to obtain a driver's license. The Circuit Court for Washington County properly exercised its discretion in fashioning the conditions of probation for Meyer. Judge Boone articulated the "facts and circumstances of the crime itself and the background" he took into consideration when fashioning Meyer's sentence. *Dopkowski*, 325 Md. at 679, 602 A.2d at 1189 (holding that in imposing a sentence for violation of probation, a trial court is not required to provide explicit findings indicating it took into account unsworn statements made by defendant). The special condition of probation that Judge Boone imposed on Meyer was designed to keep Meyer, a recidivist, from committing any further motor vehicle violations. Additionally, the no-driving condition was unambiguous, specific, and Meyer clearly

31

understood the standard of conduct required of him. Given Meyer's extensive history of driving violations, short of incarceration, this condition of probation was both a reasonable and a rational basis selected by the Circuit Court to prevent Meyer from continuing to commit offenses involving the operation of a motor vehicle.

The no-driving condition is also consistent with the promotion of Meyer's good behavior to ensure public safety. The trial court could have imposed merely a prison sentence, which would have had the same effect of preventing Meyer from driving. Instead, as a matter of grace, the court imposed a split-sentence and suspended half of Meyer's fourteen-year sentence, allowing for his early release from prison. In exchange, Meyer agreed to abide by the condition that he not drive a motor vehicle in the State of Maryland. About six months prior to the end of his probationary term, Meyer did, however, violate this condition of probation—not by obtaining a driver's license from the MVA, but by operating a motor vehicle. This came to light when Meyer was detained, and admitted to committing additional traffic offenses and violating the no-driving condition of his probation.

### Illegal Sentence

There are two relevant ways whereby a defendant may challenge on appeal an illegal sentence, either under Maryland Rule 8-202 on direct appeal or pursuant to a motion filed at any time under Rule 4-345(a). Rule 8-202(a) allows a sentence to be challenged if the defendant appeals within 30 days after the entry of judgment. If a sentence is considered "illegal" under Rule 4-345(a), a defendant may file a motion to correct it, even if the

32

defendant failed to object to the sentence, consented to the sentence at the trial level, or failed to challenge the sentence in a timely filed direct appeal. *Chaney v. State*, 397 Md. 460, 466, 918 A.2d 506, 509 (2007). Furthermore, if a motion to correct an illegal sentence under Rule 4-345(a) is denied, the defendant may appeal the denial to the appellate courts. *Id.*

Allowing a court to correct an illegal sentence at anytime is a narrow exception to the general rule of finality. *Barnes v. State*, 423 Md. 75, 83, 31 A.3d 203, 208 (2011). If the sentence is not illegal, the validity of the condition of probation must be addressed on an appeal of the final judgment and sentence, rather than during a proceeding involving charges of violation of probation. *Hudgins v. State*, 292 Md. 342, 347–48, 438 A.2d 928, 930 (1982). In other words, Rule 4-345(a) may not be used as a vehicle to obtain belated appellate review of the proceedings that led to the imposition of judgment and sentence. *Pollard v. State*, 394 Md. 40, 47, 904 A.2d 500, 504–05 (2006).

An illegal sentence is one not permitted by law. *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737, 740 (2000); *see also Bonilla*, 443 Md. at 3, 115 A.3d at 99; *State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765, 767–68 (2006). The purpose of Rule 4-345(a) is to provide a vehicle to correct an illegal sentence where the illegality inheres in the sentence itself, not for re-examination of trial court errors during sentencing. *Matthews v. State*, 424 Md. 503, 512, 36 A.3d 499, 505 (2012); *Montgomery v. State*, 405 Md. 67, 74–75, 950 A.2d 77, 81–82 (2008). It follows that an illegal sentence can be corrected "where there is some

illegality in the sentence itself or where no sentence should have been imposed." *Hoile v. State*, 404 Md. 591, 621, 948 A.2d 30, 48 (2008) (citing *Evans v. State*, 382 Md. 248, 278, 855 A.2d 291, 309 (2004)). This Court has explained:

> The notion of an "illegal sentence" within the contemplation of the *Walczak* decision deals with substantive law, not procedural law. It has obvious reference to a sentence which is beyond the statutorily granted power of the judge to impose. It does not remotely suggest that a sentence, proper on its face, becomes an "illegal sentence" because of some arguable procedural flaw in the sentencing procedure.

*State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765, 768 (2006) (citing *Corcoran v. State*, 67 Md. App 252, 255, 507 A.2d 200, 202 (1986)). Furthermore, a defendant's consent does not cure the illegality that inheres in the sentence. *Holmes*, 362 Md. at 196, 763 A.2d at 740; *see also White v. State*, 322 Md. 738, 749, 589 A.2d 969, 974 (1991).

In *Holmes v. State*, this Court discussed illegal conditions of probation. 362 Md. 190, 763 A.2d 737 (2000). We held that the Circuit Court for Baltimore City improperly imposed home detention as a condition of probation and concluded that the proper remedy was to strike the illegal condition from the sentence. *Holmes*, 362 Md. at 197, 763 A.2d at 740. There, the trial court lacked the statutory authority to impose home detention as a condition of probation because the General Assembly explicitly authorized the courts of various counties to impose home confinement as a condition of probation. The Legislature, however, did not identify Baltimore City as one of those jurisdictions. *Holmes*, 362 Md. at 195, 763 A.2d at 739. Although the defendant initially signed the order of probation to indicate his consent, the consent did not validate the illegal sentence. *Holmes*, 362 Md. at

34

195–96, 763 A.2d at 740.

On the basis of the record before us, there is nothing to indicate that the Circuit Court in the instant case imposed an illegal sentence when it included, as part of Meyer's sentence, three years of unsupervised probation, nor does Meyer make such an argument. Meyer's three-year probation was permitted by law. First, Md. Code (2001, 2008 Repl. Vol.), § 6-222 of the Criminal Procedure Article[18] allows a Circuit Court to suspend a sentence and place an offender on probation for a period shorter than the sentence. Second, a trial judge may place "the defendant on probation on the conditions that the court considers proper." CRIM. PROC. § 6-221.

Meyer has an extensive history of "high speed moving violations and accidents" culminating in the actions which brought him before the Circuit Court on charges of vehicular manslaughter. As explained by both Judge Boone and Judge Dwyer, the no-driving condition of probation was a restriction designed to address the court's legitimate concern that Meyer would significantly endanger himself and others if given the opportunity to operate a motor vehicle again. Under the circumstances, the Circuit Court properly placed Meyer on

---

[18] CRIM. PROC. § 6-222(a) allows a Circuit Court or District Court to:
(1) impose a sentence for a specified time and provide that a lesser time be served in confinement;
(2) suspend the remainder of the sentence; and
(3)(I) order probation for a time longer than the sentence but, subject to subsections (b) and (c) of this section, not longer than:
1. 5 years if the probation is ordered by a circuit court; or
2. 3 years if the probation is ordered by the District Court; . . . .

unsupervised probation pursuant to Criminal Procedure Article §§ 6-221 and 6-222. In fact, Meyer concedes that he violated the special condition of probation that he not operate a vehicle in the State of Maryland. Meyer agreed to not operate a motor vehicle while on probation in lieu of serving his full sentence and could have contested that condition on a direct appeal within 30 days of sentencing. Instead, Meyer did not challenge the special condition of probation until he had violated that condition almost eight years after it had been imposed. Only after the Court of Special Appeals denied his Application for Leave to Appeal the Order of the Circuit Court that revoked his probation did Meyer file a motion to correct an illegal sentence under Rule 4-345(a).

We make clear in this opinion that a sentencing judge's imposition of no-driving as a condition of probation is not an illegal sentence within the meaning of Rule 4-345(a). The condition of probation imposed is neither intrinsically or substantively unlawful. Because Rule 4-345(a) is an exception to the general rule of finality, it is "limited to those situations in which the illegality inheres in the sentence itself" which occur where "there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed." *Chaney v. State*, 397 Md. 466, 918 A.2d 510 (2007). Here, Meyer's *nolo contendere* pleas resulted in valid convictions, and his incarceration and probationary terms were permitted by law. Further, the no-driving condition of probation as imposed by Judge Boone was neither an abuse of discretion nor a violation of the separation of powers doctrine.

36

**Rivera's Challenge of the No-Driving Condition of Probation**

The no-driving condition of probation is not a violation of the separation of powers doctrine nor is it an abuse of discretion. "A trial court has broad authority to formulate conditions of probation." *Bailey*, 355 Md. at 294, 734 A.2d at 687. "It is well established in this State that the terms and conditions of probation must be clear, definite, [] reasonable" and "have a rational basis . . . ." *Smith v. State*, 80 Md. App. 371, 375, 563 A.2d 1129, 1131 (1989).

Rivera intentionally used her vehicle to assault two bicyclists, and she physically hit one bicyclist with her SUV before fleeing the scene. After being convicted by a jury of two counts of second-degree assault and one count of failing to remain at the scene of an accident involving bodily injury, it was within the sentencing judge's discretion to grant probation in lieu of incarceration. A sentencing judge "is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation." *Dopkowski*, 325 Md. at 679, 602 A.2d at 1189. Here, the no-driving condition was entirely appropriate. As the sentencing judge stated, Rivera's "conduct is [] such that she's a danger on the highway" because twice she intentionally used her SUV to swerve into a group of bicyclists, and, in one instance, physically careened into a bicyclist with her vehicle. Rivera motioned the court to place her on probation before judgment, and she consented to the no-driving condition.

Importantly, the court acknowledged the role of the two principles discussed above: a sentencing judge's broad discretion to sentence a defendant, and the elasticity of the

separation of powers doctrine. After the judge imposed, on the record, the conditions of probation, including that Rivera not drive a motor vehicle until "February 27, 2015 or until [the] Motor Vehicle Administration permits you to drive, whichever is later in time[,]" Rivera's attorney asked the court to take additional action with regard to the MVA:

> [DEFENSE COUNSEL]: Would your honor kindly add that any period of time she . . . [o]r that for any period of time that she's not driving pursuant to your order, that that be given credit by the MVA[?] That she be given credit by the MVA so if she doesn't drive for a year, let's say nothing happens at the MVA for a year . . . [her] hearing's postponed and whatnot, that when she gets there, you know, a year and a half from now or a year and a month from now, that they're directed by you to say okay well she should get credit for that. I think they would anyway –
>
> THE COURT: I think they would and I know with you representing her there won't be any problem. I'm not going to order . . . [the] MVA to do something then I run into more problems. I got the judiciary telling the executive branch what to do, and I don't want to tell them how to implement their system. I would think you'd have a very good case that that year would count, and I can't imagine nothing [sic] happening for a year with the MVA.
>
> [DEFENSE COUNSEL]: Well, with all due respect I think that's what your honor's order is inherently saying, indeed dictating to the MVA what to do.
>
> THE COURT: No, I'm not. I'm telling her she can't drive even if the MVA begs her to drive, and they give her a new car and say please drive, she can't drive. But if they decide after a year that, you know what, for whatever the reasons are . . . they say okay, you're going to be suspended for another year, I'm not going to get involved in that.

We hold that the imposition of the no-driving condition, which Rivera consented to, was not an inappropriate exercise of the court's discretion. "A judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, . . . including his or her reputation, prior offenses, health, habits, mental and moral

propensities, and social background." *Poe*, 341 Md. at 532, 671 A.2d at 505 (citations omitted). At sentencing, the judge commented on the facts leading up to Rivera's conditions and stated, "until you've been penalized in taking your license away, or not being able to drive, I don't know that you will fully appreciate what you did or what you're supposed to do." The sentencing judge articulated a concrete concern about the possibility of recidivism. Therefore, the court imposed a reasonable sentence, including the imposition of the various terms and conditions of probation.

## Consenting to a Condition of Probation

This Court in *Sheppard* did not address whether a defendant could freely and voluntarily agree to a no-driving condition because the issue was not raised in the Circuit Court, nor was it raised on appeal. 344 Md. 143, 153–54, 685 A.2d 1176, 1181 (1996). While probation is characterized as a consensual agreement between the trial court and a defendant, the presence or absence of consent is not dispositive of the propriety of a condition of probation. *See Scott*, 238 Md. at 275, 208 A.2d at 580 (discussing probation as an agreement between the trial court and the defendant that results in the defendant obtaining his freedom as long as he conducts himself in a manner consistent with established communal standards and public safety). Even where there is consent, a condition of probation may be improper, such as when a trial court exceeds its authority constitutionally or if the condition of probation is "inherently illegal" under Rule 4-345(a).

At sentencing, Meyer and Rivera were each provided with a Probation/Supervision

39

Order identifying, in writing, their respective sentences, including the conditions of probation. The Probation/Supervision Order includes a Consent section with the following statements:

> I have read, or have had read to me, the above conditions of probation. I understand these conditions and agree to follow them. I understand that if I do not follow these conditions, I could be returned to court charged with violation of probation.

By signing the Consent section, Meyer and Rivera acknowledged and agreed to the terms of probation, including the consequences of any failure to comply with the proscribed standard of conduct. As noted above, a defendant cannot properly consent to a sentence that is "inherently illegal" under Rule 4-345(a). Meyer's sentence, however, is not "inherently illegal." Therefore, we agree with Judge Dwyer that Meyer's consent to the special condition of probation was valid. Furthermore, a sentencing judge has the ability to fashion reasonable conditions of probation. We also agree that the consent Rivera gave concerning the conditions of probation was valid. Rivera requested the benefit of probation before judgment after being convicted of two counts of second-degree assault and one count of failure to remain at the scene of an accident involving bodily injury. The sentencing judge properly explained the nature of each condition and the resulting consequences if any condition were to be violated.

## CONCLUSION

In conclusion, in *Meyer*, we affirm the judgment of the Circuit Court for Washington

40

County and, in *Rivera*, we reverse the judgment of the Court of Special Appeals.[19] First, the sentence imposed in the *Meyer* case is not an illegal sentence within the meaning of Rule 4-345(a). Second, in *Rivera*, the trial judge did not abuse his discretion when he imposed the no-driving condition of probation. Finally, *Sheppard* is no longer controlling because we disavow the rationale for its holding. Accordingly, it is within a trial court's authority to restrict a defendant's privilege to drive as a condition of probation if it is reasonably related to the subject of the conviction.

**IN CASE NO. 21, JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

**IN CASE NO. 22, JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. PETITIONER TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**

---

[19] For public safety reasons, a sentencing judge could notify the MVA when it imposes a no-driving condition in a criminal or traffic case. This avoids placing the defendant "in a status of which [the] MVA is completely unaware." *Sheppard*, 344 Md. at 153, 685 A.2d at 1181 (citing *In re David K.*, 48 Md. App. 714, 725, 429 A.2d 313, 319 (1981)).